Thiele *v.* Thiele.

CHARLES THIELE

*v.*

AUGUST THIELE et al.

[Decided May 18th, 1898.   Filed January 4th, 1899.]

A widow continued to occupy the premises of her deceased husband under an arrangement with her children that she might do so in all respects as if she were the owner, and a part of the arrangement probably was that she should pay the taxes, water rents, insurance and repairs. This she did for several years and then fell in arrears, and one of the children advanced the money to pay the taxes, with the consent of the others, and on proceedings for partition, claimed a lien for the amount so advanced upon the shares of his brother and sisters.—*Held* that, although the case was probably not within the rule laid down in *Spinning* v. *Spinning, 16 Stew. Eq. 215,* yet that the party advancing was entitled, under the circumstances, to a lien for the amount advanced upon the fund, the proceeds of the sale in partition.

In partition. Exceptions to master's report, finding a lien upon the land held in common in favor of one of the tenants, based upon advances made by him for the payment of taxes and assessments.

*Mr. Thomas F. Noonan, Jr.,* for the exceptant.

*Mr. James A. Gordon, contra.*

Thiele v. Thiele.

PITNEY, V. C.

The ancestor died in 1880, leaving a widow and four children—two sons and two daughters—all of whom were adults. The indications are that the widow was well advanced in years. Besides the land in question, a house and lot, the ancestor appears to have left some little personal property, which was taken possession of by the widow and partially distributed among her children.

The parties were foreigners and not familiar with our laws, and seem to have supposed and acted upon the idea that the widow was the absolute owner of the land. At any rate, by the consent of all the children, she continued to occupy the homestead as her own, renting out a portion and taking the rents and profits. She also paid the taxes, water rents and insurance, and made the repairs for several years, and it may be fairly taken to have been a part of the arrangement between her and her children under which she occupied her homestead that she was to incur those expenses. So that the case is probably not within the rule established in *Spinning* v. *Spinning, 16 Stew. Eq. 215.*

About the year 1890 she became unable to pay all these expenses and support herself, and her son August Thiele advanced money for that purpose and also to pay taxes, water rents and insurance, amounting to about $800.

Shortly before she died, August ascertained the truth as to the situation of the title and conferred thereon with his brother and sisters, and they appear to have all agreed that he should be reimbursed for what he had advanced, and for that purpose a mortgage was prepared for three-fourths of the amount, to wit, $600, to be executed by the two sisters, brother and mother to him. The mortgage was executed by one of the sisters, a Mrs. Kunz, since deceased, and by the mother, but the other brother and sister refused to join in it. In that condition of affairs the bill for partition was filed by Charles Thiele against his mother, his brother August and a sister, Mrs. Shock, and the children of the deceased sister, Mrs. Kunz. The mother died after bill filed. August, by an answer, set up a lien upon

Thiele *v.* Thiele.

the premises for taxes, assessments, water rents, repairs and insurance paid. The matter was referred to a master, who reported in favor of August for the taxes of 1888, 1891, 1892 and 1894, with interest; for water rents for the same four years, with interest; for an assessment for benefits of $188, made in the year 1891, with interest; also another assessment for benefits made in 1893, with interest; and for repairs and insurance, several small sums; in all, $583.06.

The only ground taken in argument against this finding was that these payments were not made, either directly or indirectly, by August Thiele, but were made by his mother out of her own funds. It was not contended that if he had actually supplied the money for that purpose he should not be reimbursed out of the property.

Admitting that it was the legal duty of the widow, under the circumstances, to pay these taxes, yet, if she failed to pay them, they and also the water rents would be a lien upon the premises, and the property would be sold to pay them.

The evidence shows that it became necessary during the latter part of the widow's life, in order that she should be supported, to relieve her of the burden of paying these taxes, and, under the peculiar circumstances of the case, I conclude that the children, by their acquiescence in their mother's occupation and with their knowledge of her poverty, waived their right, if they had any, to have her pay the taxes and water rents. The two assessments for benefits stand on a different basis. It was not her duty to pay those.

So that the only question is the one of fact which was litigated before the master, whether August Thiele actually furnished the money to make these payments. On this question I think the clear weight of the evidence is in favor of the master's conclusions.

For these reasons, I will advise that the exceptions be overruled.