HAZEL REDDISH, Appellee, v. LIZZIE JOHN et al, Appellants.

**LIMITATION OF ACTIONS:** Barred Claims in re Accounting. In an action for mutual accounting, the items urged by each are in the

nature of an offset to the items urged by the other, and the striking of a balance is not interfered with by the statute of limitations.

REMAINDERS: Ratable Charge for Special Assessment. Where a
2   public improvement is permanent, and increases the value of a remainder, a special assessment therefor should be ratably borne by the life tenant and remainderman, in proportion to the benefit accruing to each.

REMAINDERS: Payment of Joint Obligation—Contribution. Payment
3   by one remainderman of interest on the joint obligation of remaindermen lays the foundation for contribution from those not paying.

REMAINDERS: Taxes not Paid by Life Tenant—Contribution. The
4   fact that a life tenant is, by contract, obligated to pay insurance, repairs, and improvements on the property *only from the income from the property,* is sufficient reason for granting to one remainderman contribution from other remaindermen for ordinary taxes paid on the property, when the remaindermen contesting contribution fail to show that the life tenant had in his possession any "income from the property" with which to pay said taxes.

REMAINDERS: Improvement on Property—Contribution. Under the
5   record, *held* that a charge paid by one remainderman for painting the property in question was a *pro rata* charge against all remaindermen.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

NOVEMBER 26, 1920.

LIZZIE John and Caleb John complain of allowances made in an accounting.—*Modified and affirmed.*

*Clark, Byers & Hutchinson,* for appellants.

*Parsons & Mills* and *John L. Gillespie,* for appellees.

SALINGER, J.—I.  So far as this appeal is concerned, the single question is whether, in an accounting between remaindermen, one of them was awarded enough.  The appellants John contend that the findings below did not allow them enough.

One contention on the part of the appellee is that no allowance can be made for some items claimed by the appellants, be-

cause to do so would go beyond the scope of the reference which the trial court ordered. For illustration, it is claimed that, if the reference is limited (and it is asserted to be so-limited) to what is due Lizzie John for advances made by her, no allowance can be made if her husband did the advancing. We are of opinion that the trial court, in acting upon the report of the referee, treated all the matters urged upon us as being in issue, and we shall so treat them here.

II. As to an item claimed to be due for paying a note of Watts' at the Iowa National Bank, we cannot interfere with the refusal to allow this, if for no other reason than that this item is not pleaded.

III. As to the item at Century Savings Bank, we agree with the referee that the evidence is insufficient to charge Watts with same. We incline to hold that the item of the note at the Des Moines Savings Bank is in like case.

IV. The most vigorous dispute is over a claim that Watts should be charged at the rate of $500 a year for six years, on account of rental for a farm owned by the father of both Lizzie John and Mary Watts. The farming upon which this claim is based began in 1902, and ended in 1908. Much of the testimony in support of this claim cannot be considered, because of the statute prohibition as to personal transactions with one deceased at time of hearing. And we find that the weight of the evidence is against the claim that any rental arrangement was ever made, or that anything is due by implied contract. It would serve no useful purpose to elaborate. We agree with the referee in declining to allow this item.

V. The appellants make claim now for compensation due Lizzie John for attending to renting, collecting the rent for, and looking after and caring for, the property of appellee Watts. With one exception, no claim on these accounts seems to have been made in the pleadings, nor have we been able to find what the alleged services were worth, if anything. The exception is an item of $8.75 which the referee declined to allow. This sum was paid by appellants to one Van Liew, for collecting rent. Without going into an elaboration that the size of the item will scarcely justify, we are of opinion that this should have been allowed.

VI. The appellants advanced $747 on the purchase price of a store building from Watts, and the referee allowed but $663. As to this item, the appellee especially urges his plea of laches and statute of limitations. We do not have before us a continuous open account, which would postpone accrual until after the last item, and we are convinced that, if this were an affirmative suit to recover for this expenditure, the suit could not be maintained. But, in the very nature of things, a mutual accounting makes the items urged by each in the nature of an offset to the claim of the other. And the striking of a balance is not interfered with by the statute of limitations. And, there having been an allowance, and there being no cross-appeal, we cannot well bar this item for laches. We therefore hold that there should be added to the allowance already made the sum of $84, with interest.

1. LIMITATION OF ACTIONS: barred claims *in re* accounting.

VII. Lizzie John paid a special tax of $31.06 for the laying of a sidewalk. She contends that this is a permanent improvement; that, even if a contract of settlement does not free her or her father from paying for this, the general law of life tenancy is that the life tenant is not bound to pay for permanent improvements. The appellee says that a sidewalk is not necessarily a permanent improvement, and that it is matter of common knowledge, in cities at least, that sidewalks laid down are very soon taken up and changed. Also, that, in any event, the betterment was for the benefit of the life tenant during the time he lived; that he lived a year to enjoy this benefit; and that there is no evidence how much longer than that the sidewalk would have lasted. On the authority of 16 Cyc. 632, *Huston v. Tribbetts*, 171 Ill. 547 (49 N. E. 711), and *Hay v. McDaniel*, 26 Ind. App. 683 (60 N. E. 729, 731), we incline to the opinion that $10.35 should have been allowed on this account. But *Shelangowski v. Schrack*, 162 Iowa 176, 181, states the general rule that the life tenant cannot, on his own volition, charge the property with permanent improvements, for the very evident reason that otherwise he might destroy the value of the reversion by the charges placed against it; and that he may so charge the property only upon agreement, express or implied, on part of the remaindermen. An examination of the evidence satisfies us, however, that this improvement

2. REMAINDERS: ratable charge for special assessment.

was so known and acquiesced in as that the *Shelangowski* rule is not in the way.

VIII.  The appellants were charged with having received $16 a month for the entire period during which Lizzie John attended to the renting of the Mary Watts property.  The evidence shows fairly enough that there were periods aggregating, say, three months, in which the building was vacant.  The appellee contends that, though this may be so, it may yet be the fact that, though the store was vacant for such length of time, it was due to the interval between the moving out and moving in of tenants, and that full rent may have been received even for the times at which the store was empty.  It seems to us to be strained reasoning.  And, on the evidence as it stands, we are inclined to add to the recovery of the appellant the further sum of $48, with interest thereon.

IX.   The referee declined to allow an item of $726.84, which Lizzie John claims to have paid.  The father of these litigants and grandfather of one of them was once in litigation as to the

3. REMAINDERS: validity of deeds executed by the father to these
payment of joint others.  There was a settlement in writing.  This
obligation:
contribution. settlement confirmed these deeds, and reserved a life estate in the father.  At this time, the father was indebted in the sum of $4,500.  One contract provision was that the children and the grandchild should pay this indebtedness.  Two sons paid their one fifth in cash.  The other three mortgaged the land which the father had given them for $2,700, and with this sum met their contract obligation to pay said debts.  The mortgage was that of the children.  The proceeds were used to pay what had become the debt of those children.  The mortgage was not joined in by the father, and foreclosure could not affect the father's life interest.  Therefore, he was under no obligation to pay interest on this mortgage, and he had no motive for volunteering to do so, because, as said, this foreclosure could not affect him.  If Lizzie John paid the interest on this mortgage, she was not a volunteer.  The mortgagee could not be compelled to accept his interest in thirds.  Someone had to pay it in full.  If Lizzie John paid it, while she protected her own interest in the land she also protected that of her fellow remaindermen.  We can perceive no good reason why Mary Watts should not make

contribution in proportion to her share in the land. We are satisfied Lizzie made the payment, and that it was not made, as is intimated, out of the common family purse. And we therefore hold that, on this account, the recovery of appellant should be increased by $242.28 and interest on the same.

X. As a general rule, the ordinary taxes must be paid by the life tenant. The appellant expended $68.01 for certain taxes that became due and payable on January 1, 1910. And the re-

4. REMAINDERS: taxes not paid by life tenant: contribution.

fusal to allow this item is defended here on the ground that appellant was then the life tenant, and can have no contribution because under obligation to pay this item.

For the taxes on the farm for the years 1904 and 1908, appellant paid out $98.07; for the taxes on the home and for the year 1904, $12.39; for taxes paid on the farm in 1905 and 1907, $110.89. The refusal to allow these last is defended on the ground that, at that time, the father, Thomas A. Watts, was life tenant, and it was his duty to pay these taxes, and that, therefore, there can be no contribution exacted from Mary A. Watts. It is responded that, if it were assumed that Thomas A. Watts was under obligation, the fact is that he did not meet the obligation, and did not pay these taxes, and that appellant did, and thus benefited her fellow remaindermen. Appellee, in turn, responds that this might be so if the payment had been made to redeem from a tax sale, but that there never was a tax sale; that no money was paid on these items because the title of the remaindermen had become endangered; that the proof of the expenditure is vague and uncertain; and that, for all that appears, if payment was made, it was made out of the common family purse. We shall not follow these various ramifications to the extent possible. We are satisfied these expenditures were made. We do not believe that the burden rests on the appellant to show that they were not made out of a common purse, and hold that their testimony that they paid, makes at least a prima-facie case that payment was made from their funds. We shall not pass on the distinction, if there be one, between payment by one not a volunteer, made before tax sale ensues, or payment by the same after tax sale. We think the allowance for these taxes is controlled by the contract which was made between Thomas A.

Watts and his children at the time when he gave them the title to the property upon which these taxes were paid. As said, ordinarily it would be the duty of Thomas A. Watts, who became life tenant by reservations in his deed, to pay the ordinary taxes. As clear as that is, is it that a valid contract changing this obligation can be made. The sole question is, Was it made? One stipulation in that contract was:

"The said Thomas Watts shall pay all insurance and repairs out of the income derived from the property described in the above-named deeds as the same shall become necessary, or due, as the case may be, together with all improvements. The insurance shall be carried on said properties in the name, or names, as the case may be, of the parties or party who are named as grantees in the deed covering that particular property, and in the event of any loss under said policies the amount realized therefrom shall be and become the property of said grantee or grantees named in the deed covering the property on which the loss occurs."

And its interpretation is not difficult. The father had given these grantees the property upon which the expenditures of the kind referred to in the contract were made. He agreed to pay even for these out of any income that his life estate in the property yielded to him. We are not minded to hold that he is to go beyond that, and that, after having parted with the land and with the income from it, he should pay, say, for insurance for the benefit of his grantees out of some fund other than such income. We are of opinion that he is under obligation to pay for such outlays and expenditures only if they can be paid from the income, and that, therefore, those who assert that they need not pay because Thomas A. Watts was under obligation to pay, have the burden of showing that there was an income from which the payments could have been made. It follows that, without such proof, insurance, necessary repairs, and improvements paid by one of the reversioners entitle to contribution from the others.

This makes it unnecessary to consider the claim that Mary was under a partnership obligation in the dealings with her father which entitles to contribution on her part for these items.

It suffices that Thomas Watts was under no obligation to pay these; that the remaindermen, therefore, were; and that

the one remainderman paying does not place her in the attitude of a volunteer merely.

We think there is nothing in *Crawford v. Meis*, 123 Iowa 610, as construed in *Patty v. Payne*, 178 Iowa 593, 597, that militates against these conclusions. See *Cooper v. Brown*, 143 Iowa 482, 493; *Weare v. Van Meter*, 42 Iowa 128.

As to obligation of the life tenant to pay for insurance for the benefit of the remaindermen, see 16 Cyc. 632; *In re Cameron's Estate*, 158 Mich. 174 (122 N. W. 564, 566). See, generally, *Thiele v. Thiele*, 57 N. J. Eq. 98 (40 Atl. 446).

We hold that this is sufficient reason for holding that appellant should have contribution from Mary A. Watts for one third of said taxes, to wit, $73.78, and interest.

XI.    As to the item of $62.85 for painting the homestead in 1910, which the referee declined to allow, we are of opinion that contribution was due for this. Therefore, there should be added to the recovery of the appellant $20.91.

5. REMAINDERS: improvement on property: contribution.

The decree belo7 is modified accordingly.—*Modified* and *affirmed*.

WEAVER, C. J., EVANS and PRESTON, JJ., concur.