GEORGE DICKSON, Appellee, v. FIDELITY & CASUALTY COMPANY of New York, Appellant.

No. 43576.

MAY 4, 1937.

REHEARING DENIED OCTOBER 1, 1937.

Carl F. Jordan, for appellant.

Guy P. Linville and Carl Hendrickson, for appellee.

KINTZINGER, J.—The record in this case shows that the Des Moines Securities Corporation was a duly qualified dealer of securities under the Iowa Securities Act (Code 1935, section 8581-c1 et seq.) from March 5, 1932, until December 7, 1932, and was duly registered as such in the office of the secretary of state of the state of Iowa.

The record also shows that, during that period, the plaintiff, George Dickson, 87 years old, delivered to, and said Des Moines Securities Corporation received from said Dickson, certain securities of the aggregate market value of about $16,000 for proper registration or sale. The record also shows that said Des Moines Securities Corporation failed, neglected, and refused to properly account for or return said securities to plaintiff, although a demand therefor was made by plaintiff on said dealer corporation.

The defendant company furnished a surety bond in the amount of $5,000 for the Des Moines Securities Corporation, the dealer, as required by section 8581-c14 of the Iowa Securities Act (Code 1935).

This action was commenced to recover the statutory liability under said bond, which provides substantially as follows:

"That we, Des Moines Securities Corporation, as principal, and The Fidelity & Casualty Company of New York, N. Y., as surety, are held and firmly bound * * * in the penal sum of Five Thousand Dollars ($5,000.00), * * * for the payment of which * * * we bind ourselves * * * jointly and severally * * * by these presents.

"The conditions of the above obligation are such that:

"Whereas, the above named principal obligor has made or is about to make application to the Secretary of the State of Iowa, for registration as a dealer in securities within said State, pursuant to the provisions of the Iowa Securities Law and is about to be registered as such dealer and

520

"Whereas, the above named principal obligor as applicant is required to file a surety company bond in accordance with the provisions of the Iowa Securities Law, and

"Whereas, if said above named principal * * * shall properly account for all *moneys or securities received from or belonging to another and shall pay, satisfy and discharge any judgment or decree that may be rendered against such dealer* * * * in a suit brought by a *purchaser of securities* against such dealer in which *it shall be* found * * * that such securities *were sold* by such dealer in violation of law or that such purchaser was defrauded in the sale of such securities, then this obligation to be void, otherwise to be and remain in full force and effect. * * * 5th day of March, 1932.

> "[Signed]  Des Moines Securities Corp.,
> Principal
> "The Fidelity & Casualty Company
> of New York, N. Y., Surety.

"Filed with Secretary of State,
Mar. 5, 1932."   (Italics ours.)

The record shows that no judgment was obtained against the dealer because of the violation of any of the conditions of this bond. Additional facts are set out in the opinion.

At the close of the evidence, defendant filed a motion for a directed verdict chiefly upon the ground that no judgment had been secured against the dealer, and because plaintiff failed to show that the dealer failed to pay any judgment rendered against him in an action brought by a purchaser of securities in which judgment it was found that such securities were sold in violation of the bond. This motion was overruled.

Thereupon, plaintiff filed a motion for a directed verdict in his favor in the sum of $5,000. This motion was sustained and a verdict was returned in that amount.

Thereupon, defendant filed a motion for a new trial and application for a judgment notwithstanding the verdict upon the same grounds set out in its motion for a directed verdict. These motions were overruled and judgment was entered in favor of plaintiff for $5,000, from which defendant appeals.

Appellant contends that the court erred in failing to sustain its motion for a directed verdict and a new trial because appellee had not first obtained a judgment against the dealer,

the Des Moines Securities Corporation, under its liability for a violation of the bond; appellant's contention being that before an action can be commenced against the surety, a judgment must be first secured against the dealer.

The question here raised is whether or not an action can be commenced against the surety under any circumstances before a judgment has been first secured against the principal.

The conditions of the statutory bond in question under section 8581-c14 are:

(1) "that the dealer shall properly account for any moneys or securities *received* from or belonging to another, and"

(2) "shall pay * * * any judgment * * * that may be rendered against such dealer * * * in a suit * * * brought by a *purchaser* of securities against such dealer in which [judgment] it shall be found * * * *that such securities were sold* * * * in violation of this chapter." (Italics ours.)

In construing the statute, it is well to bear in mind that the universal rule for the construction of statutes is that effect should be given to the entire statute and every part of it, if possible. 59 Corpus Juris, 995, sec. 595. This rule has been consistently followed in this state. Rohlf v. Kasemeier, 140 Iowa 182, 118 N. W. 276, 23 L. R. A. (N. S.) 1284, 132 Am. St. Rep. 261, 17 Ann. Cas. 750; Elks v. Conn, 186 Iowa 48, 172 N. W. 173; Drazich v. Hollowell, 207 Iowa 427, 223 N. W. 253; Rhoades v. Allyn, 220 Iowa 474, 262 N. W. 788.

With this rule in mind we will examine the record in the instant case to determine what construction should be given the statutory bond in question.

Appellant contends that the only condition under which it is liable under this bond is, that the dealer fail to *"pay, satisfy and discharge any judgment or decree that may be rendered* against such dealer in a court of competent jurisdiction in a suit brought by a *purchaser of securities against such dealer in which it shall be found * * * that such securities were sold* * * * in violation of law or that such purchaser was defrauded in the *sale* of such securities." (Italics ours.)

In other words, appellant contends that, before the surety can be held liable on its bond, a judgment must first have been secured and entered against the dealer, and until that time the surety is not liable under the bond.

522

Appellee contends, however, that this bond covers two obligations:

The first, that the dealer *"shall properly account for all moneys or securities received from or belonging to another,"* and

The second, that the dealer *"shall pay,* satisfy and discharge any judgment * * * that may be rendered *against such dealer* in * * * *a suit* * * * *in which it shall be found* * * * *that such securities were sold* by such dealer in violation of law."

This action is not based upon a violation of the second condition above set out, but upon a violation of the first condition, that the dealer *properly account for all* moneys or *securities received by such dealer and belonging to another.* It is not based upon fraud in connection with securities *sold to the appellee,* but upon the dealer's failure to account for *securities received from the appellee,* who contends that it was unnecessary and impossible to secure a judgment against the dealer, because of his fraud in connection with the *sale of securities,* for the simple reason that this was not an action to recover for fraud in connection with the *sale* of securities to the appellee, *because there was no such sale.* On the contrary, this is an action to recover for a breach of the first condition, that required the dealer "to properly account for securities *received"* *from the appellee.* The only judgment required to be first secured under this bond is one recovered against the dealer in an action in which it is found that *securities were sold to appellee in violation of the statute.* If, therefore, it was first necessary to recover a judgment for the *wrongful sale of securities, appellee might never have been able to recover upon this bond,* because the securities were not sold to appellee, but *were received from him* by the dealer.

This action is commenced because of the dealer's failure to "properly account for *securities received by such dealer* from the appellee." The statute also provides that "in suits against the surety upon such bond it shall not be necessary to join such dealer as a party." (Sec. 8581-c14 of the Codes of 1931 and 1935.)

An examination of the bond shows that its obligations are of a two-fold character, viz: First, that the dealer "properly account for all moneys or securities *received* from or belonging

to another," and, second, that he "pay, satisfy and discharge any judgment * * * rendered against him * * * in a suit brought by a *purchaser* of securities against such dealer in which it shall be found * * * that *such securities were sold by such dealer* in violation of law, or that such purchaser was defrauded in the sale of *such* securities."

The surety may be liable for the dealer's failure to comply with one or both of these conditions. It will be noted that the first condition requires the dealer "to properly account for securities *received* from another." Under the second condition the surety becomes liable only after a judgment has been secured against the dealer in an action in which it is found that *securities were sold by the dealer* in violation of law. There is no provision in this statute requiring appellee to first secure a judgment against the dealer for *"failing to properly account for securities received by him from another."* Therefore, if it appears that a dealer has failed to properly account for securities *received from another,* the surety becomes liable upon his undertaking without the necessity of showing that a judgment has been first secured against the dealer for failing to *"properly account for securities received by the dealer from"* a plaintiff. If the first obligation of the bond has any force whatever, then it is unnecessary to secure a judgment thereon in advance.

The lower court in its ruling said:

"If the only obligation of the surety was to * * * 'pay, satisfy and discharge any judgment or decree' etc., then what was the use of the first part of that section? It says that 'Any bond required by Section 8581-c11 shall be conditioned that the dealer *shall properly account for any moneys or securities received from or belonging to another.*' That is all superfluous language if the contention of the defendant is * * * correct * * *. If it is only contended that we can sue the bonding company after establishing a judgment against the principal, then they (the Legislature) could have commenced in the middle of this section and have said that the bond should be conditioned upon payment, satisfaction * * * of any judgment or decree obtained against the principal.

"Now, I think the right interpretation is * * * that a plaintiff may sue the bonding company to require them to account and pay over to him * * * any moneys or securities in his hands

524

belonging to the plaintiff, and * * * the obligation of the surety is also to *pay any judgment* that may be obtained against the principal." (Italics ours.)

Appellant contends that the ruling in this case is controlled by our ruling in the recent case of Kellogg v. Bell, 222 Iowa 510, 516, 268 N. W. 534, 537. In that case this court said:

"The undertaking of defendant bonding company is that the defendant * * * [the dealer], *shall pay* * * * any judgment * * * that may be rendered against her in a court of competent jurisdiction *in a suit* * * * *brought by the plaintiff as a purchaser of securities* in which it shall be found and adjudged the plaintiff was defrauded *in the sale of the securities.*" (Italics ours.)

But the conditions of the bond in question may be breached, first, by the dealer's failure to properly account for securities *received* by him from another; and second, by a failure of the dealer to pay a judgment secured against it "in an action in which it is found that securities were *sold* to the appellee" by such dealer in violation of law. The second condition does not apply in this case because the action is not based upon fraud in connection with securities *sold* to the appellee.

There has, however, been a breach of the first condition because the evidence shows without dispute that the dealer has failed to properly account for securities *received from the appellee,* and as neither the statute nor the bond require that a judgment against the dealer for the breach of this obligation be first secured by the appellee, it must necessarily follow that the appellant becomes liable for a breach of this condition of the bond, without first securing judgment. And herein lies the distinction between Kellogg v. Bell, 222 Iowa 510, 268 N. W. 534, and the instant case.

The distinction between this case and the Kellogg case is that the dealer in that case fraudulently *sold* securities to the plaintiff therein, *who* failed to secure a judgment against the dealer before commencing his action against the surety. As that was a prerequisite to commencing an action against the surety, the court rightly held that there could be no recovery because no judgment had been first obtained against the dealer in which it was found that the securities were *sold* to the plaintiff in violation of the statute.

The present action, however, is not brought on account of fraud in the *sale of the securities to the appellee,* but is based on the dealer's *"failure to properly account for securities received by the dealer from the appellee."*

The question of the dealer's failure "to properly account for securities *received* from another" was not in the Kellogg case, and the question of the "fraudulent *sale of securities to appellee"* is not in this case. The court in the Kellogg case did not construe the first obligation of the bond because that condition of the bond had not been breached, and plaintiff there made no claim that it had. There the purchaser was defrauded in the *sale of bonds to him by the dealer,* and it was, therefore, necessary that a judgment finding such fact be first secured to establish a liability against the surety.

If the surety is not liable for the dealer's "failure to properly account for the securities *received* by him from another," then the first condition of the bond is meaningless, because the only obligation of the bond would be a liability created by the fraudulent *sale* of securities; and if that is the only liability, there would be no liability whatever on the part of the dealer who *"fails to account for securities received from another."*

As shown by the authorities hereinabove cited, it is the universal rule of law that all the provisions of a statute should be given effect, if possible. In order to give the first obligation of the statute and bond any force or effect, such provision must impose a liability upon the surety without first securing a judgment against the dealer for his failure to properly account for the *securities received by him from appellee.* Such was the ruling of the learned trial court, and it is our conclusion that the construction so placed upon this part of the statute is correct.

As the statute and the bond contain no requirement that a judgment be first secured against the dealer for his "failure to properly account for securities *delivered* to him by another," and as the statute and the bond *do* make it necessary to secure a judgment for the fraudulent *sale* of securities, and as the statute and bond only provide for a liability on the part of the surety for the fraudulent *sale of securities* after a judgment has been first obtained against the dealer, it is obvious that a liability for a failure to properly account for securities received from another is omitted from the requirement that a judgment be first obtained. It is, therefore, our conclusion, under the well known

legal axiom of "expressio unius est exclusio alterius" ("The expression of one thing is the exclusion of another," 25 Corpus Juris 220, 1 Bouv. Law Dict. 412 [Rawle's 3rd Rev. p. 2134]), that it was not necessary to secure a judgment against the dealer before commencing an action against the surety for the dealer's failure to properly account for securities *received from another.*

The statute and bond only require that a judgment be first obtained against the dealer for securities wrongfully *sold to a plaintiff,* but do not require such a prerequisite for the dealer's failure to "account for securities *received by him from another.*" It is, therefore, our conclusion that the language of the statute does not require appellee to first secure a judgment for the dealer's "failure to account for securities received from another."

As the facts in this case show without dispute that the value of the securities delivered to the dealer exceeded the amount of the bond in question, and as there are no circumstances tending to show that such testimony might not be correct, we are constrained to hold that the judgment of the lower court was correct.

Other minor errors are alleged. We have given them careful consideration but find no merit therein.

For the reasons hereinabove expressed, the judgment of the lower court is hereby affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, DONEGAN, PARSONS, STIGER, and SAGER, JJ., concur.