John G. Kinnett, Appellee, v. Hubert K. Ritchie et al.,
Appellants, Kennedy Fennell, Administrator, Appellee.

No. 43544.

May 11, 1937.

Garrett & Elson, for appellants.

Buell McCash and Bracewell & Poston, for appellees.

RICHARDS, C. J.—On January 5, 1915, Thomas J. Kinnett died testate, owning personalty and real estate. By the terms of his will a life estate in one tract of real estate was devised to a daughter with remainder over to the heirs of her body. A life estate in all other property, real and personal, was devised to his wife, Lyda Kinnett, in lieu of dower or other rights she might have as widow, with disposition to others, including plaintiff herein, at her decease. In this action the real estate sought to be partitioned is that in which a life estate was devised to Lyda Kinnett. The latter survived testator for a period of more than sixteen years, her death occurring in May, 1931. She made no formal election to accept or reject the terms of the will nor was she served with any notice demanding that she so do. But plaintiff contended and the trial court held that Lyda Kinnett did in fact voluntarily elect to accept the life estate as provided in the will. Defendants claim that such holding was erroneous.

The pertinent facts on the question of election are practically uncontroverted. The will was admitted to probate on February 6, 1915. Two days later Lyda Kinnett qualified as executrix without bond agreeably with the provisions of the will in that respect. Notice of her appointment was published in February, 1915. She was still such executrix at time of her death. No inventory was ever filed. No reports were filed. No showing as to the extent of the personal assets coming into the hands of this executrix was ever made excepting that in 1916 she applied to the probate court asking approval of a sale of decedent's interest in an icehouse and tools and the good will of the business, but not including the accounts. The sale was for $1,000 and was approved. There was no accounting by Lyda Kinnett, as executrix or as an individual, to any person other than herself for any of the personal estate or for any of the income from the real estate. A residence property and a store building in Corydon, and evidently some small acreage described in the decree, comprised the real estate in which the life estate was devised to Lyda Kinnett, and of this real estate she had the full possession during

the more than sixteen years during which she survived her husband. In April or May, 1915, she raised the roof of the residence, thereby making a two apartment house out of what had been a single dwelling. In 1917 the store building burned and was replaced with a brick building so constructed by Mrs. Kinnett that there was a store room on the ground floor and two living suites above. In the store room Mrs. Kinnett conducted a restaurant business for several years. She leased it to others during the periods she was not so engaged. During all these years Mrs. Kinnett personally negotiated the renting of the store room and the four living apartments except as at times she occupied one of the apartments or the store room. She collected and received all the rentals without hindrance or question from any source. She deposited the rentals in her personal bank account. The record is singularly devoid of any evidence of acts or attitude on part of Mrs. Kinnett inconsistent with an acceptance of the life estate. On the contrary, and while we need not express ourselves as to its probative value, the only statement of Mrs. Kinnett shown in the testimony was to an enquiring purchaser, whom she informed that according to the terms of the will she could not sell the residence property.

From this record it is evident that from 1915 to 1931 Lyda Kinnett accorded to herself the identical thing devised to her by the terms of the will, that is, the whole of the use of and income from the property, with possibly assumed additional authority to invest personal assets in reconstructing the real estate. She had no source of title, under which she could claim such entire use and income, other than the devise of the life estate, and we find in the record nothing affording any reasonable explanation of her conduct if it was not impelled by and based on the terms of the will.

And there is in this case more than mere acceptance of the income. There is the additional feature of the development by Mrs. Kinnett of an increased rental production from the properties. She made the life tenancy more valuable. Her purpose in so doing must have been personal benefit to herself because she was the person who had assumed the sole possession and the right to the income. In order to enjoy the full benefits of her apparent purpose and efforts in her own behalf, she must have contemplated in connection therewith a continuance of the enjoying of the entire income. What she did indicates that of such

continuance of enjoyment she felt assured. There is nothing that would have warranted such apparent attitude of assurance on her part except reliance on her rights as the life tenant. We are of the opinion she accepted and relied on this only thing that spelled continued possession.

■■■ That a widow has elected to accept the terms of the will of her deceased spouse in lieu of her distributive share of the estate may be established as a fact by a showing of her voluntary acts and conduct. Pabbeldt v. Schroeder, 202 Iowa 689, 210 N. W. 958; Phillips v. Phillips, 204 Iowa 78, 214 N. W. 548; Percifield v. Aumick, 116 Iowa 383, 89 N. W. 1101. As to the showing in the case at bar we are of the opinion it leads to the conclusion that the widow elected to accept the life estate provided by the will, in lieu of distributive share, in view of our previous holdings, including the cases above cited. There is a wide distinction between the facts shown here and those in Berry v. Donald, 168 Iowa 744, 150 N. W. 1048, and In re Estate of Heuberger, 191 Iowa 59, 181 N. W. 773, cited by appellants.

■■■ In the decree the trial court entered a finding that from the proceeds of the sale of the real estate in suit there should be paid a $500 note, filed on June 15, 1931, by Corydon State Bank as a claim against the estate of Thomas J. Kinnett. Of this appellants complain. The finding does appear to have been at least inadvertent. There is no suggestion that this belated claim had been allowed in the probate proceeding. In the hearing in the partition action neither the note nor the claim was offered in evidence. In the record appears no evidence in any way tending to establish the claim. This finding and the order for payment of the note should be stricken from the decree, and in lieu an order made that proceeds from the real estate be applied upon said claim only in the event and to the extent that said claim may be lawfully allowed as a liability payable from said proceeds.

■■■ Appellants contend that the court erred in not allowing to them as personal representatives and heirs of Lyda Kinnett compensation for the improvements placed by her on the real estate in suit. Their argument is that Lyda Kinnett being a tenant in common as the owner of a distributive share was entitled to recover compensation for improvements made in good faith upon common property. They claim an amount such that it exceeds their estimate of the present value of the property, and

thereon base a claim that the interests of all the beneficiaries except Mrs. Kinnett have been wiped out, and that the entire title should now be established in the heirs of Mrs. Kinnett. The contention is based on an erroneous assumption as Lyda Kinnett was not a tenant in common but a life tenant of the whole. Appellants do not argue that as a life tenant she would have been entitled to such reimbursement and that question need not be discussed although we refer on that question to the holding in Shelangowski v. Schrack, 162 Iowa 176, 143 N. W. 1081, 1083, in which it is said that a life tenant cannot charge the reversion with any valuable improvements placed by him on the land and that if this were the rule the life tenant could seriously jeopardize the reversion. The opinion states with respect to the plaintiff in that case that, "As a life tenant he had no implied authority to charge the reversion with anything." See also Booth v. Booth, 114 Iowa 78, 86 N. W. 51. In the case at bar the improving of the property was the act of the life tenant, on her own initiative without concurrence, consent or cooperation in any manner by the remaindermen. We find no error in the point as raised by appellants with respect to the court's refusal to allow the compensation that was claimed.

█▌█ Appellants claim the court erred in not decreeing that appellants be reimbursed out of the proceeds of the sale of the properties for a proportionate share of paving and general taxes alleged to have been paid by Lyda Kinnett. The payment of the general taxes accruing during the life estate was the obligation of Mrs. Kinnett as life tenant and such taxes require no discussion. Booth v. Booth, 114 Iowa 78, 86 N. W. 51.

█▌█ Concerning the paving assessments the following facts appear: On some undisclosed date between December 14, 1914, and January 13 or 14, 1915, a paving assessment against testator, amounting to $677.69 was paid. There are no records indicating by whom this payment was made. Late in 1915 a paving assessment of $192.82 against the business property was paid. There is in evidence a city treasurer's receipt, dated January 7, 1916, showing payment by Mrs. Kinnett of a second paving assessment against the business property amounting to $100.69.

It is stipulated in the record that the $677.69 assessment was against the southeast quarter of block 8 in Corydon. However, only one portion of this block constituted the residence property in which Mrs. Kinnett had a life estate. Another portion was

devised by testator to his daughter and her heirs, and therein plaintiff and the other remaindermen taking at end of Mrs. Kinnett's life estate have no interest, and owe no duty to contribute to any assessments thereon. We are unable to find in appellants' argument reference to any evidence that would have enabled the trial court to determine what portion of the $677.69 was assessed against the property involved in this action, nor have we found such evidence in the record. Nor do we find that the trial court had before it any sufficient evidence with respect to the degree of the permanence of the improvement or its other characteristics, material to determining to what extent if any the advantages of the improvement were of benefit to the remaindermen. The evidence on the question whether Mrs. Kinnett paid the $677.69 is not convincing. There is testimony of a witness who was city clerk at the time of the assessments who in one part of his testimony stated that the assessments were paid by Mrs. Kinnett. But he admits that he was at the time collecting many assessments and his testimony is couched in such terms that the trial court might well have concluded that the witness was expressing his belief rather than personal knowledge or actual recollection concerning payment by Mrs. Kinnett of the $677.69 assessment twenty years previously. The testimony of this witness is not supported by any record evidence. The construction of the improvement was approved, and the assessment of the $677.69 became due and payable on December 14, 1914. The assessment was against the testator Thomas J. Kinnett and as stated the $677.69 was paid at some undisclosed date between December 14, 1914, and January 13 or 14, 1915, when the assessments remaining unpaid were certified to the county auditor. The assessment was testator's to pay, and he was living during this period when it was paid until January 5, 1915. In view of the matters that have been pointed out appellants did not make the showing necessary to entitle them to contribution on account of the $677.69 assessment.

With respect to the assessments of $192.82 and $100.69, the latter, as shown by the receipt, was paid by Mrs. Kinnett. But if it be assumed that the $192.82 was likewise paid by her, then both of these payments were made by a person who at the time of the payments was the executrix of the estate against which the assessments stood, with personal assets of the estate in her hands in an amount she at no time disclosed. Appellants' rights can

rise no higher than the rights of their decedent, Lyda Kinnett. Were she living and here seeking apportionment the foundation of her claim would be the proof that the assessments were paid from her own funds. Identifying the funds as her own would, of course, necessitate the distinguishing of them from the personal assets in her hands as executrix; and in a court of equity, before being accorded relief out of the assets of the estate, it would be required of her that she account to the same estate for the personal property received as executrix, because she was under not only moral but statutory obligation so to do, and in a court of equity she could not escape the application of the maxim that he who seeks equity must do equity. No such accounting appears. We agree with the district court that appellants have not established by preponderance of the evidence that they were entitled to an apportionment of the amount of these assessments. The further fact was before the court that the sum of $292.42 of taxes accruing during the year prior to the termination of the life estate had not been paid by Lyda Kinnett, and remained to be paid by the remaindermen or from the property. It is likely any possible apportionment against the remaindermen by reason of the two assessments being discussed would not have been greater than the amount of this evident offset.

■■■ Appellants claim that the court erred in ordering taxed as a part of the costs an attorney fee for plaintiff's attorneys. In support appellants say that where the title to property involved in a partition action is put in issue and all parties employ counsel of their own choosing, attorney fees in favor of plaintiff's attorneys are not taxable as a part of the costs. This court has frequently laid down a general rule to which appellants refer. Hawk v. Day, 148 Iowa 47, 126 N. W. 955; Todd v. Stewart, 199 Iowa 821, 202 N. W. 844. That there are exceptions to the rule is pointed out by appellee. In Smith v. Smith, 132 Iowa 700, 109 N. W. 194, 119 Am. St. Rep. 581, defendants by way of cross-petition alleged that there was real estate additional to that described in plaintiff's petition, derived from the same source, and demanded that it also be partitioned and an accounting made of rents and profits. Although the cross-petition resulted in a contested issue as to the title to the real estate described therein, it was held that, so far as the land which plaintiff sought to be partitioned, there was not the slightest controversy, and that the defendants appeared not to contest the title

as alleged by plaintiff but to introduce and litigate another claim. It was held that as to the partition of this tract, described in plaintiff's petition, there was no error in assessing attorney fees. In Hanson v. Hanson, 149 Iowa 82, 86, 127 N. W. 1032, 1033, the opinion states that if the contest is over a collateral matter attorney fees may be taxed, citing Smith v. Smith, supra. The opinion further says, "In order that plaintiff may have attorney's fees taxed, it must appear that the real issue was over a collateral matter as in the Smith case, supra, or that the defense is frivolous, and not in good faith. Under all the circumstances disclosed, we are inclined to hold that there was no error in taxing the fees. The right that each of the parties held in the real estate or its proceeds was not disputed. The defense was technical in character, and the only real issue was a collateral one. About all there is to the case is the question as to who should sell the land—referees in partition or the executor."

From Kuhn v. Downs, 156 Iowa 247, 250, 136 N. W. 199, 200, we quote, "It is, of course, true that if the defendant in such proceedings sets up a hostile claim of title, which the court finds to be sham or frivolous, and is apparently pleaded simply to cast upon the plaintiff all the expense of a partition to which he is clearly entitled, such an issue will not be allowed to deprive plaintiff of the right to a taxation of attorney's fees (Hanson v. Hanson, 149 Iowa 82, 127 N. W. 1032)."

It can hardly be said that the nature of the defense brings the case before us within any of these exceptions. The issue was not collateral but directly involved the respective interests of the parties. There was not such complete lack of testimony to support defendants' claims that there would be warrant for saying that the issues raised were frivolous or not in good faith. In view of the rule so long followed the necessary conclusion is that the court erred in allowing the attorney fees as a part of the costs.

The case is reversed and remanded for correction of the decree in the court below in accordance with the foregoing.

Appellee's motion to dismiss appeal has been overruled.—Reversed and remanded.

STIGER, DONEGAN, PARSONS, KINTZINGER, HAMILTON, ANDERSON, and MITCHELL, JJ., concur.