DENVER HOLZHAUSER, appellee, v. IOWA STATE TAX COMMISSION, appellant.

LEWIS WALKER, appellee, v. IOWA STATE TAX COMMISSION, appellant.

No. 48333.

(Reported in 62 N.W.2d 229)

December 15, 1953.

Rehearing Denied February 11, 1954.

Leo A. Hoegh, Attorney General, Henry W. Wormley, Special Assistant Attorney General, and George Cosson, Jr., Director Property Tax Division, of Des Moines, for Iowa State Tax Commission, appellant.

Work & Work, of Ottumwa, for appellees.

Bliss, J.—Plaintiffs, Holzhauser and Walker, for several years were tenants, respectively, of farms of .120 acres and 160 acres, owned by Mrs. Gertrude M. Davis during said tenancies, and of which she died testate on October 2, 1947, devising a life estate to each plaintiff for the period of his natural life, in the farm he had occupied and operated. The will was duly probated and the provisions were made effective, and thereafter each plaintiff as a life tenant of his respective farm continued to operate it, and to occupy it as his homestead, as he previously had done as lessee.

Subject to these two devises, and to the payment of her just debts and funeral expenses, the testatrix made the following bequests:

(1) "To my cousin $500 and also my fur coat"; (2) to another cousin, $500; (3) to Fred Schafer, $500; (4) to the

Baptist Church of Farson, Iowa, $500; "and to my second cousin, Dorothy Arendt, * * * my large diamond ring. * * *

"(6) All of the remainder and residue of my estate shall be converted by my executor into cash, and the same shall be divided among my legal heirs * * * according to the Statutes of the State of Iowa."

Each plaintiff made application to the Board of Supervisors of Wapello County for a homestead tax credit, which was granted on the tax for the year 1951, payable in 1952, involved herein, and for prior years. On August 16, 1952, the defendant, by registered mail, served a notice dated August 12, 1952, on each plaintiff, stating therein that the homestead credit, granted to each by the Board of Supervisors had been disallowed by it, for the following reason: "The applicant has a life estate in the above described property, the remainder interest being in persons who are not blood relatives." Each plaintiff, on September 2, 1952, served notice of appeal from the order, on the defendant and the county auditor.

Each plaintiff filed a petition in the district court setting out the factual matters above-noted, with the legal description of the land of each, and the improvement of the dwellings by modern plumbing and lighting, and also alleging that: testatrix owned the land in fee simple; her husband had predeceased her and she was a widow at her death; she bequeathed the remainder interest after the life estates to her collateral heirs, she having no direct descendants. It was also alleged in the petition of each plaintiff that: he "is entitled to homestead tax credit as an 'owner' as defined by law, being the devisee of the deceased owner, Gertrude M. Davis. There is no division of interest between said life tenant and any other person which must be shared by blood relatives and Section 425.11, Paragraph 2, expressly grants a homestead tax credit to the petitioner." The petitions prayed that each plaintiff be entitled to the homestead tax credit for the period of his natural life, and that the order of defendant purporting to set aside the said tax credits be adjudged rescinded, and that each plaintiff have such other and further relief as the court may deem just.

The material and pertinent allegations in the answer are as follows: That the petitioners are not owners as defined in section

425.11 of the homestead credit act, Code of 1950; "the Commission by way of further answer alleges that the applicant * * * was granted only a life estate in the premises under the last' will and testament of Gertrude M. Davis who was in no way related to the applicant and that the remainder interest was devised under the same will to parties who were not related to Gertrude M. Davis or the applicant; that the said life tenant and remaindermen are not blood relatives as is required under the express provisions of section 425.11, Code of 1950;

"That the applicant is not in any manner qualified nor can he qualify to receive a homestead tax credit under the laws of the State of Iowa." The replies of plaintiffs denied the affirmative allegations of the answer.

Most of the material facts were established by stipulation of the parties though they disagreed with respect to some conclusions to be deduced therefrom.

I. While all parts of a statute must sometimes be studied and construed to determine the meaning of a particular statute or part thereof, the important part of said chapter 425 in the determination of this appeal is paragraph 2 of section 425.11 of the chapter, which is as follows: "The word, 'owner', shall mean the person who holds the fee simple title to the homestead, and in addition shall mean the person occupying as a surviving spouse or the person occupying under a contract of purchase where it is shown that not less than one-tenth of the purchase price named in the contract actually has been paid and which contract has been recorded in the office of the county recorder of the county in which the property is located, *or the person occupying the homestead under devise or by operation of the inheritance laws where the whole interest passes,* or where the divided interest is shared only by blood relatives, or by legally adopted children, or where the person is occupying the homestead under a deed which conveys a divided interest where the other interests are owned by blood relatives or by legally adopted children." (Italics ours.)

II. The sixth paragraph of the will definitely establishes that it was the clear intent of the testatrix to employ the doctrine of equitable conversion in the testamentary disposition

of part of her property, but not to all of it. She imperatively directed the executor of her estate to convert into cash "all of the remainder and residue of my estate." She plainly excepted from equitable conversion the devises of the life estates in paragraphs 2 and 3 of the will, and the five bequests in paragraph 4 of the will. In other words, the only real estate devised by the will was the two life estates given to the plaintiffs. The remainder interest in the two farms and all personal property other than the specific bequests at the instant of the death of the testatrix were converted into cash and passed under the will as personal property to her statutory heirs.

The doctrine of equitable conversion has been so long recognized in Iowa and has been so fully treated in many of the opinions of this court, that any extended discussion of its general principles is unnecessary. "Equitable conversion is defined as a constructive alteration in the nature of property by which in equity real estate is regarded as personalty or personal estate as realty." Beaver v. Ross, 140 Iowa 154, 157, 118 N.W. 287, 289, 20 L. R. A., N. S., 65, 17 Ann. Cas. 640; Brickson v. Schwebach, 219 Iowa 1368, 1370, 261 N.W. 518; Boland v. Tiernay, 118 Iowa 59, 62, 91 N.W. 836; In re Estate of Sheeler, 226 Iowa 650, 661, 662, 284 N.W. 799; In re Estate of Dodge, 207 Iowa 374, 381, 223 N.W. 106; In re Estate of Sanford, 188 Iowa 833, 837, 838, 175 N.W. 506; In re Estate of Jurgens, 239 Iowa 490, 492, 31 N.W.2d 633; In re Estate of Jackson, 217 Iowa 1046, 1050, 1051, 252 N.W. 775, 91 A. L. R. 937; Inghram v. Chandler, 179 Iowa 304, 306, 161 N.W. 434, L. R. A. 1917D 713.

III. "The great weight of authority is in favor of the proposition that the conversion takes place at the instant of testator's death, and that all property rights must be determined as if the conversion had taken place at that time, and the rights of the parties are adjusted as if the property were personalty." Beaver v. Ross, supra, 140 Iowa 154, 159; In re Estate of Bernhard, 134 Iowa 603, 605–607, 112 N.W. 86, 12 L. R. A., N. S., 1029; Emmack v. Tish, 214 Iowa 794, 797, 243 N.W. 517; Brickson v. Schwebach, supra, 219 Iowa 1368, 1370; Fischer v. Klink, 234 Iowa 884, 889, 14 N.W.2d 695, 153 A. L. R. 1084;

In re Estate of Warner, 209 Iowa 948, 952, 229 N.W. 241; Peters v. Thoning, 231 Iowa 755, 759, 2 N.W.2d 76; In re Estate of Jackson, supra, 217 Iowa 1046, 1051; In re Estate of Mount, 189 Iowa 279, 283, 178 N.W. 391; Ihle v. Ihle, 222 Iowa 1086, 1090, 270 N.W. 452; Shillinglaw v. Peterson, 184 Iowa 276, 287, 167 N.W. 709.

■ IV. "Under the doctrine of equitable conversion, nothing is better established than the equitable principle that land directed to be sold and turned into money is to be considered as that species of property into which it is directed to be converted, and this is especially so where the direction is made in a will." In re Estate of Jackson, supra, 217 Iowa 1046, 1050, 1051.

"Where a testator in his will directs a sale of real estate, the property is thereby converted from realty to personalty, and, whenever the sale takes place the proceeds arising therefrom are to be distributed as personalty." In re Estate of Bernhard, supra, 134 Iowa 603, 606, 607.

"That a testator may convert his real estate into personalty in such a manner as that the beneficiaries under the will take no part of the real estate, but simply a portion of the purchase price upon a sale by trustee or executor, is, of course, true. When this is done, the realty is constructively converted into personalty, and the beneficiary takes no title to the real estate as such." Hanson v. Hanson, 149 Iowa 82, 84, 127 N.W. 1032.

"If the will worked an equitable conversion, the beneficiaries took no interest in the real estate." Grady v. Grady, 221 Iowa 561, 564, 266 N.W. 285, 287.

"In the instant case the equitable conversion of this property took place at the death of the testator. * * * This property, after the death of the testator, and up to the time of Mable P. Smith's election, was, in the eyes of equity, personal property." In re Estate of Warner, supra, 209 Iowa 948, 952.

■ "The theory, and, we think, the true rule is that in a case where there is a life estate, after which the property is to be sold, the interest of the life tenant is realty but the interest of the remainderman would be treated as personal property from the time of the testator's death. In the instant case the

will passed to the remaindermen no right to the possession of the real estate but only a right to the proceeds at the expiration of the life estate * * *." In re Estate of Myers, 234 Iowa 502, 512, 513, 12 N.W.2d 211, 216, 150 A. L. R. 254, 261.

"Alta Klink, being entitled to one twelfth of the proceeds of the sale of the land when made, had such an interest as was subject to assignment. Dating from the death of Christian Nelson, the land had all the attributes of personal property, and except in the case of reconversion by agreement of all the heirs, the interest of each heir would be only an interest in the proceeds." Fischer v. Klink, supra, 234 Iowa 884, 889. See also In re Estate of Mount, supra, 189 Iowa 279, 282.

"We think, however, that the effect of this will was to work an equitable conversion of this property. * * * and a conversion takes place at the instant of the testator's death, and all property rights are then determined as if the conversion had taken place at that time, and the rights of the parties are the same as if the property were personalty. In other words, the interest passes as personalty, and the legatees have no estate in the land as such." Shillinglaw v. Peterson, 184 Iowa 276, 287, 167 N.W. 709,713.

V. A life tenant of real estate is required to pay the ordinary taxes, the interest on special assessments and on mortgages on the real estate. It is also his duty to keep the place in repair from ordinary wear and tear. His failure to meet any of these requirements might subject him to a charge of committing waste on the property. Reddish v. John, 190 Iowa 49, 54, 179 N.W. 951; Harris v. Brown, 184 Iowa 1288, 1293, 1294, 169 N.W. 664; Kinnett v. Ritchie, 223 Iowa 543, 547, 273 N.W. 175; Booth v. Booth, 114 Iowa 78, 86 N.W. 51; Olleman v. Kelgore, 52 Iowa 38, 40, 2 N.W. 612; Koch v. Kiron State Bank, 230 Iowa 206, 219, 297 N.W. 450; Harris v. Evans, 196 Iowa 799, 809, 195 N.W. 178; National Surety Co. v. Walker, 148 Iowa 157, 162, 125 N.W. 338, 38 L. R. A., N. S., 333; First Congl. Church v. Terry, 130 Iowa 513, 515, 107 N.W. 305, 114 Am. St. Rep. 443.

The title to the Homestead Tax Exemption Act, as it appears in chapter 195 of the Acts of the Forty-seventh General

Assembly, states in substance that it was an Act to encourage the acquiring and ownership of homesteads, as it would generate a healthier and more prosperous condition. The obligations placed upon the life tenant, as noted in the preceding paragraph of this Division V, are very substantial inducements to plaintiffs to meet the purposes of the Act.

The district court filed findings of fact, conclusions of law, and a decree, all of them giving full support to the allegations of plaintiffs' petitions, and to the provisions of the Act, as they appear in paragraph 2 of section 425.11 of the 1950 Code of Iowa. We have copied in full this paragraph so that each part may be considered singly and in relation to every other part, and have italicized the part thereof that fully sustains the decree of the trial court, and this opinion. We set it out again. *"The word, 'owner', shall mean the person who holds the fee simple title to the homestead, and in addition shall mean the person * * * or the person * * *, or the person occupying the homestead under devise * * * where the whole interest passes * * *."* (Italics ours.)

In Eysink v. Board of Supervisors, 229 Iowa 1240, 1244, 296 N.W. 376, 378, Justice Garfield speaking for the court, in discussing said paragraph 2, said: "It will be observed, that in addition to a fee simple titleholder, the term 'owner' also includes, according to the statute: * * *", and then listed the five classes of owners "in addition" to the fee simple titleholder, and noted as the third class the "devisee or heir of deceased owner." Appellant quotes at length from the opinion in its brief and argument. It is clear beyond any question of doubt that the person or owner designated by the words of the statute, italicized above, and the person referred to in the third class division in the Eysink opinion is not one who holds a fee simple title or estate, but is one other than such holder and owner and "in addition" thereto. To so read or construe the statute that he must be a fee simple holder is putting something into the statute which the legislature never placed there. It is true that a tax exemption statute must be strictly construed but that does not mean that the clear, plain, unambiguous language of the statute can be made to say what it unquestionably does not say.

But that is just what the defendant is contending for. It is construing the term "whole interest" in the above quoted language of the statute to mean nothing less than a fee simple estate. In its printed brief and argument, it is stated: "It is the position of the appellant that the whole interest referred to in the statute is the same as a fee simple interest and that the whole interest was viewed by the legislature as being the whole title to the homestead premises." Elsewhere in its brief and argument it is said "the term 'whole' interest when used in the statute clearly means the whole interest, absolute interest or fee in the property." In oral argument to this court appellant contended that the term "whole interest was synonymous with fee simple title." If this contention and argument of appellant is sound and to be accepted, then there was no need for the legislature to enact that portion of paragraph 2 of the section 425.11, which we have set out and italicized herein, for the person defined therein would be the holder of a fee simple estate, and included in the first lines of paragraph 2, to wit: "The word, 'owner', shall mean the person who holds the fee simple title to the homestead." Under appellant's construction the language: "and in addition shall mean * * * the person occupying the homestead under devise * * * where the whole interest passes" is not only superfluous, but inconsistent and incongruous. Certainly the words "and in addition" to the holder of a fee simple titleholder mean that the "devise" was not of a fee simple interest.

Statutes must be construed to give effect to every part thereof if it is reasonably possible. The rule has uniformly been followed in this state. In re Guardianship of Wiley, 239 Iowa 1225, 1228, 34 N.W.2d 593, and citations; Hartz v. Truckenmiller, 228 Iowa 819, 824, 293 N.W. 568; Dickson v. Fidelity & Casualty Co., 223 Iowa 518, 521, 273 N.W. 102. It is the general rule in other jurisdictions. 82 C. J. S., Statutes, section 316b, pages 551, 552. The reasonable construction of the provision is as above-stated. The devise to each plaintiff was an estate for his life, of which the whole interest passed to each devisee. By such construction every part of the statutory provision is given effect. To accept the contention of appellant

would be a holding that the legislature enacted a provision that serves no purpose. Such a decision should be avoided if there is a reasonable alternative. The trial court found one. It held that each plaintiff owns a life estate in the entire homestead tract which he is occupying, and which he acquired by devise under the will of the testatrix. A life estate is a freehold distinct from a fee simple or an estate for years. Each received the whole interest in that freehold. The legislature, of course, knew that interests and estates of various kinds in land are devised. Had the legislature intended that the "devise" should exclude a life estate, the whole interest in which was held by the devisee, from the benefit of a homestead credit, it could and would have plainly so stated. But it did not. It is most likely that it could see no sound reason or purpose in granting the exemption to a fee simple estate and denying the benefit to a life estate. The appellant argues that it is because the life tenancy might be determined the next day by the death of the tenant. That does not appear to us to be a sound reason. The life expectancy tables show that is not what usually occurs. They may and usually do continue for many years. There is little, if any, reason, in granting it to one and denying it to the other.

█ A life tenant has full control and possession of his tenancy, without any interference from those holding a remainder or reversion. He must not materially injure the permanent rights of the latter in the land. There is no tenure or privity of contract between them. The remainderman does not succeed to the life tenant's title, but gets it from another and independent title. Beeman v. Stilwell, 194 Iowa 231–237, 189 N.W. 969, quoting 31 C. J. S., Estates, sections 30 to 34, pages 39 to 43.

█ There is no divided interest in the life tenancies of the plaintiffs. No one shares any right therein with them. Each is occupying the homestead under devise. The tenancy of each is for his life. The whole interest in the tenancy passed to each under the will of the testatrix. They were not only devised the whole occupancy, use and interest in each of the farms for life, but they were devised all of the existing realty rights which the testatrix owned at her death. No real estate was devised by the

testatrix except the two life estates, and no other realty passed into her estate, under the numerous authorities we have cited. Necessarily, plaintiffs received and now possess and occupy all of the real-estate interests of the testatrix. Any remainder or reversionary interest in those farms was converted into personalty the instant testatrix died. The equitable conversion, as directed by testatrix, of all the remainder except the life estates devised to plaintiffs and the specific bequests cannot be disregarded in determining what real estate and what interest therein was devised to plaintiffs. The devise made to each plaintiff was a life estate in the specified real estate. Under the provisions of the will the testatrix died seized of no other estate or interest in said property, and plaintiffs received the whole of that interest. There was no issue of divided interest or of blood relation. No constitutional question is argued in this court.

The appeal is triable anew. The decree of the district court is—Affirmed.

HAYS, C. J., and GARFIELD, WENNERSTRUM, SMITH, and THOMPSON, JJ., concur.

MULRONEY, J., dissents.

OLIVER, J., joins in the dissent.

LARSON, J., takes no part.

MULRONEY, J. (dissenting)—I respectfully dissent. The question in this case is the interpretation that is to be placed on a definition statute. Chapter 425, Code, 1950, grants a tax credit to the "owner" who occupies as a homestead and section 425.11, paragraph 2, undertakes to define the word "owner." The simple question is whether the statutory definition of "owner" includes the "life tenant." As I understand the majority opinion it means the legislature defined the word "owner" to include the life tenant where the life estate was created by a will with the further limitation that the life estate must be followed by an equitable conversion of the realty or no named remainderman. It could not even be argued that the definition statute would include a life estate created by deed—save as that might be

included in another portion of the statute, which is not here involved, and which I shall discuss later.

I. Such a decision that would give the tax credit to the life tenant based on how the tenancy was created and what occurs after the tenancy is over needs to be thoughtfully examined. Surely the first reaction one would have after reading this statute would be that if the legislature intended to give the tax credit to a life estate it would have said so. It cannot be said the legislature was not familiar with the term "life estate." It used such terms as "fee simple title" and "contract of purchase" and it broadened the term "owner" to include the person occupying as surviving spouse. The majority finds the life estate included in the words "the person occupying the homestead under devise or by operation of the inheritance laws where the whole interest passes * * *." These words, the majority holds, mean and include the devise of a life tenancy when the will creates a following equitable conversion. I can see no argument for such an interpretation in the first four divisions of the majority opinion which are all devoted to a quotation of the statute and statements of general principles and rules governing equitable conversion. Nor is there much argument in the fifth and last division for this interpretation except the approval of the trial court's statement that each plaintiff "owns a *life estate* in the *entire* homestead tract which he is occupying and each appellant acquired such life estate by *devise*." It is not quite clear to me that the majority means the plaintiffs would be entitled to the credit because they occupy as life tenants created by a devise regardless of the disposition of the remainder. There is too much talk in the majority opinion about the equitable conversion that followed the life tenancy. I can only conclude the majority holds the plaintiffs were entitled to the credits here because, as the majority states, they "were devised all of the existing realty rights which the testatrix owned at her death. * * * [and] * * * any remainder or reversionary interest in those farms was converted into personalty the instant testatrix died."

The majority cites Ahrweiler v. Board of Supvrs., 226 Iowa 229, 235, 283 N.W. 889, 892, and points to our holding in that case that the purpose of the Homestead Tax Credit law

"was to encourage the acquisition and ownership of homesteads, as [this] would generate a healthier and more prosperous condition." Presumably the majority feels this purpose would be served by a statute that lessened the tax burden for life tenants when the life estate was created by devise instead of a deed and particularly served when the after estate was an equitable conversion and not an estate in remainder. I fail to follow the majority reasoning. We held very definitely in the Ahrweiler case that the "credit is to the property, as distinguished from the owner." It cannot be argued there is any difference in property interest of a life tenant based upon whether the life estate is created by deed or will and surely no difference between property interests of a life tenant, where the estate is created by will, based upon whether the after estate is converted to personalty or passed on to a remainderman. Probably the phrase "where the whole interest passes" was inserted to exclude the situation where the deceased only owned an undivided interest but in any event the interpretation placed on the language by the majority opinion is so utterly foreign to the design of the legislation and so discriminating in its classification as to render it vulnerable to an attack on its constitutionality under Article I, section 6, and Article III, section 30, of the Iowa Constitution.

This is a real-estate tax exemption statute. It frees certain land from a portion of the tax burden based on its ownership and occupancy during the tax year. The legislature is in the exercise of its taxing power for the power to tax includes the power to exempt, and both must be exercised to serve some public purpose and the classifications must be designed to carry out that purpose. We can admit the encouraging of home ownership is a public purpose but it is difficult to see how any exemption to life tenants would serve this purpose. But assuming it would, there could be no justification in saying discrimination between life estates could be made, so some, but not all, life estates that are created by will could be relieved of a portion of the tax burden, and all the rest, including all that are created by deed, must pay full tax.

In Keefner v. Porter, 228 Iowa 844, 850, 293 N.W. 501,

503, we said by way of quotation from Essex County Park Comm. v. West Orange, 77 N.J.L. 575, 577, 73 A. 511, 512: " 'That property of a class may be exempted from taxation is not to be denied, provided always that the classification is a proper one; but it is well settled that all members of a class shall be included in the taxing act whether for purpose of imposition of or exemption from taxation * * *.' "

There is no use launching into any extended discussion of the constitutionality of the statute. But it is proper to test the interpretation placed on the statute by the majority to see if such an interpretation would render it unconstitutional. This being a tax exemption statute it should, if there be any ambiguity, be construed strictly against the exemption and in any event to uphold its constitutionality. It is obvious it would be flagrantly unconstitutional as interpreted by the majority. What possible difference could there be between life estates created by will and those created by deed? And what possible difference could there be between life estates created by will where there is a following equitable conversion and where there is a named remainderman? In all instances the life tenant is possessed of the same estate in realty. The majority interpretation means the legislature named a small group, within the general classification of life estate holders, to receive the exemption. I do not feel the majority interpretation is sustained by reason or authority.

II.  It will be noticed that the statute, section 425.11, paragraph 2, Code, 1950, quoted in Division I of the majority opinion, includes within the definition of "owner" the person who occupies the homestead as the owner of a "divided interest", acquired through a will, inheritance tax laws, or deed, where the other interests are "owned by blood relatives or by legally adopted children." I cannot see how this portion of the statute has anything to do with this case. The trial court held: "* * * there was no divided interest which passed under the will within the meaning of section 425.11, subdivision (2) of the Code of 1950." But the majority cites Eysink v. Board of Supvrs., 229 Iowa 1240, 296 N.W. 376. That was a case where the plaintiff who occupied the property as a home-

540

stead owned an undivided one-half interest and the remaining interest was owned by blood relatives. The only question was whether the plaintiff was entitled to a full credit on a one-half ownership under the "divided interest" clause, and we held he was. That case has no application here. If it be thought "divided interest" would include life estate interest and remainder interest it would still have no application here where there was no remainder interest in blood relatives of the occupying life tenant.

I do not understand the majority bases its decision to any extent on the "divided interest" clause and I only mention this because of the presence of the citation of the Eysink case in the majority opinion. The Eysink case is admittedly a divided interest (between tenants in common) case and it did not involve any interpretation of the portion of the statute involved in this case. I would reverse.

OLIVER, J., joins in this dissent.