## CITY OF WINNER, S. D., v. KELLEY.

### No. 9718.

Circuit Court of Appeals, Eighth Circuit.

June 29, 1933.

Byron S. Payne, of Pierre, S. D. (Don G. Grieves, of Winner, S. D., and John Sutherland and Otto B. Linstad, both of Pierre, S. D., on the brief), for appellant.

Howard G. Fuller, of Fargo, N. D. (Lawrence, Murphy, Fuller & Powers, of Fargo, N. D., on the brief), for appellee.

Before STONE and WOODROUGH, Circuit Judges, and MUNGER, District Judge.

WOODROUGH, Circuit Judge.

This is an action for damages against the city of Winner, S. D., brought by the owner of three $1,000 unpaid 6 per cent. paving bonds, issued by the city in 1922. A jury trial was waived, and the case was heard upon a stipulation of facts. The court made findings of fact in accordance with the stipulation, and rendered judgment for damages for the bondholder against the city, in an amount equal to the face of the bonds with interest. The city appeals. The only error assigned that need be considered is that the findings do not support the judgment. Tatum v. Davis (C. C. A.) 283 F. 948.

From the pleadings and the findings it appears that the total issue for the particular paving improvement was $74,018.51, some of the bonds falling due in 1924, some each year thereafter until 1931, at which time eighteen bonds in the principal sum of $18,-018.51 were made payable. The plaintiff's bonds are among the eighteen due in 1931. Under the laws of South Dakota, as construed by its Supreme Court before the bonds were marketed, such bonds are not a general obligation of the city, but are payable out of the paving assessment. Gross v. Bowdle, 44 S. D. 132, 182 N. W. 629.

The paving tax assessment to pay the bonds was in all respects properly made by the city before the bonds were issued, and all proceeds therefrom have been properly applied by the city on the bonds. But, on account of the failure of the property owners to pay the assessments, there is not enough money in the fund to pay the last eighteen bonds of the series, including those belonging to the plaintiff.

It is claimed in this suit that the certificate and recitals appearing on the face of the bonds contain material representations, duly relied upon, which were false, that insufficient assessment was made by the city to meet the bonds, and also that the city breached its obligations concerning the collection of the paving assessment out of which the bonds were payable.

The recital in the bonds claimed to contain false representations is as follows: "It is hereby certified and recited that all acts, conditions and things required by the laws and constitution of the State of South Dakota to be performed, to happen and to exist precedent to and in the levy of said special assessments and the issuance of this bond, have been properly done, have happened, and existed in regular and due form, manner and time, as required by law; and that said special assessments against the property benefited to pay the cost of such local improvement have been legally made, * * * and the amount of said assessment is sufficient to pay the principal and interest on this bond when and as the same become due."

The first contention for the bondholder is that the amount of the assessment was not, as recited, sufficient to pay the principal and interest on the bonds when and as they became due, and therefore the city has become liable. To sustain this contention, the bondholder relies upon a computation showing that the bonds issued and the interest that would have to be paid on them would amount to $100,779.99; and another computation which shows that the proceeds of the paving assessment, if each installment should be paid at its due date, before delinquency, would amount to only $97,248, and he claims this difference of $3,531.99 proves the assessment to have been insufficient, and the recital that it was sufficient to be false.

The computations are incomplete. The bonds were sold at par, and interest accrued to the date of selling, but the bond money was not used until the contractor finished the paving work, and the interest up to that time was put in the special fund, and applied on the bonds; the amount of interest so saved by the city during the progress of the paving work was found to be $2,257.80; so that, if the anticipated proceeds of the assessment be figured out according to the bondholder's computation, and this item taken into consideration, the possible deficiency was only $1,-281.12, instead of $3,531.09. Such a difference would appear too slight to present actionable fraud.

But, regardless of whether the certificate and recitals were binding on the city or not, there is no merit in the contention. In the first place, the assessment was in exactly the same amount as the bonds issued, and in that regard the city authorities acted strictly in accordance with the requirement of the controlling statute, which says: " * * * The governing body of the municipal corporation, in place of issuing assessment certificates * * * may by ordinance provide for the issuance of its negotiable bonds without a vote of the electors in an amount equal to the entire assessment and sell the same at not less than par with accrued interest, to pay the cost of the improvement." So. Dak. Rev.

Code 1919, § 6409, as amended by chapter 319, Session Laws 1921. The bond owner was bound to know the law governing the issuance of the bonds. U. S. ex rel. Huidekoper v. Macon County Court, 99 U. S. 582, 25 L. Ed. 331.

█ Furthermore, the contention of the bondholder ignores the terms of the assessment and the nature of the certificate. The bonds called for a mathematically demonstrable amount of principal and interest. But the exact sum which would be produced by the paving tax assessment was beyond human foretelling. There were ten installments of the paving assessment, spread over ten years. These ten installments called for 7 per cent. interest and 1 per cent. a month by way of penalty upon any installment which was not paid within sixty days after a certain date in each year. The taxpayer could pay all or any installments before due, saving himself interest, but, if he did, and so brought into the fund more than enough money to meet the maturing bonds, the city was required to put such accumulations out at interest. Section 6999, Rev. Code S. D. 1919. The recital in the bonds that the assessment was sufficient could only mean that, in the honest judgment of the authorities, if the installments were collected with reasonable success, with such penalties as were to be expected, and such interest as the city could get on payments made ahead of time, there would be enough to meet the bonds and the interest thereon.

█ There is no testimony that the expectation reflected in the recital was not honestly held by the city authorities. On the contrary, the proof and finding is that the installments of the assessment now outstanding and delinquent, together with interest and penalties accrued thereon, exceed the amount of outstanding bonds and interest thereon. There was no damage to the bondholder by reason of any claimed insufficiency in the amount of the assessment. If the assessment had been substantially greater, it would have been contrary to the statute cited, and any taxpayer could have enjoined it. The trial court erred in the conclusion that there was insufficient assessment or false representations and damage to the bondholder on account thereof.

Another question elaborately argued before us arises upon the claim of the bondholder that the city wrongfully failed to enforce collection of the paving tax assessment, and on that ground became liable to him for the amount of his bonds with interest.

The court found that the city auditor in each year from 1922 to 1931, inclusive, had certified to the county auditor the installments of the assessments which were delinquent, for the purpose of the delinquent special assessment tax sale. The court also found that the county treasurer in 1922, 1923, 1924, 1927, and 1928 had failed to advertise and to offer for sale the lots covered by the special assessment then due, and that in the years 1925, 1926, and 1929, the county treasurer had advertised and offered the lots for sale, but that none of the lots was sold or bid in at the sale. What the value of the lots was as compared to the assessments levied is not disclosed. See Peake v. New Orleans, 139 U. S. 342, 11 S. Ct. 541, 35 L. Ed. 131. The appellant contends that these facts do not support the judgment rendered, while the theory of the appellee is that the city was responsible to him in damages because, in violation of his duty, the county treasurer failed to advertise and to offer for sale annually these lots on which an installment of the special assessment was delinquent, or, if he did so advertise and offer for sale in any year, the city was liable to the appellee in damages, because the county treasurer did not bid in the property for the benefit of the city, in the absence of other bidders. The appellee also contends that the county treasurer was the agent of the appellant city, and his failures in these matters were failures of the city.

The statutory scheme for the levy and collection of these assessments contemplates that the city auditor shall annually certify to the county auditor all delinquent assessments, and that the county auditor shall then certify these assessments to the county treasurer, who is required to advertise and offer for sale the parcels of land against which the assessments are imposed. Sections 6400, 6401, 6402, 6785, 6786, 6797 of South Dakota, Rev. Code 1919.

By section 6401 of the Code, it is provided that no assessment shall be paid to or collected by the city treasurer after the assessment has been certified to the county auditor, and by the next section it is provided that it is the duty of the county auditor and county treasurer to proceed with the sales for such taxes, as in the case of other tax sales.

Sections 6794 and 6803 of the Code contain these provisions:

"§ 6794. *County Treasurer May Purchase.* * * * The county treasurer is authorized at all tax sales made under the laws of this state, in case there are no other

bidders offering the amount due, to bid off all or any real property offered at such sale for the amount of taxes, penalty, interest and costs due and unpaid thereon, in the name of the county in which the sale takes place, such county acquiring all the rights, both legal and equitable, that any purchaser could acquire by reason of such purchase: Provided, that whenever any county shall acquire an interest in real property, or any rights with respect thereto, by reason of the same having been bid off in the name of the county as herein provided, such real property shall not be again advertised and sold for delinquent taxes so long as the county retains its interest in and rights to such real property; and provided, further, that all taxes subsequently accruing against such real property, or that were unpaid at the time of such sale and a lien thereon but not included in such bid, shall be considered as 'subsequent tax,' and before the county can make an assignment of such interest in and rights to such real property, or before an assignment of the certificate of such sale is made, all such taxes must be paid in full, including the amount for which such real property was so bid off, unless a compromise thereof is made as permitted by law, in which case the amount at which such compromise is made must be paid.

"§ 6803. *Transfer by County of Property Acquired by Tax Deed.* All real property bid in by the treasurer in the name of the county, and not redeemed or assigned within two years from the date of sale, shall, upon the treasurer giving the notice required by law, become the property of the county, and the treasurer shall issue a tax deed therefor to the county in the same manner as to individual purchasers. Property so acquired may, under the direction of the board of county commissioners, be sold at public or private sale. * * * The proceeds of such sale shall be placed to the credit pro rata of the various funds which are the beneficiaries of the tax for which the property was sold: Provided, however, that in private sales of real property having an assessed value of twenty-five dollars or less, the board of county commissioners may accept any amount less than the amount due for the taxes, penalty and costs incurred in obtaining a tax deed by the county."

██ The bondholder contends that, as the county treasurer is required to proceed with the sales for the assessment liens "as in the case of other tax sales," he should have bought in the property, failing other bidders, for the city, pursuant to the provisions of sections 6794 and 6803 just quoted. While these statutes confer power on the county treasurer to bid in property in the name of the county, at a sale for taxes, no statute of South Dakota has been cited which either required or authorized the city to bid at such tax sales, or making any provision as to what should be done with the purchased property, if the city should acquire it. It is the general rule that a municipal corporation has no power to purchase real property for taxes unless it is authorized to do so by statute. 3 Cooley on Taxation (4th Ed.) § 1448; 44 Corp. Jur. 1358; 61 Corp. Jur. 1229, and cases cited.

However, the Supreme Court of South Dakota, commenting on section 6794 in Brink v. Dann, 33 S. D. 81, 144 N. W. 734, 738, said: "The statute leaves it discretionary with the treasurer whether or not he shall bid the property in for the county. Section 2203, Pol. Code." So that, even as to the county, the bidding in of the property by the county treasurer is not a duty even where the sale is for county and state taxes—it is a matter of discretion lodged in the county treasurer.

In Grand Lodge of A. O. U. W. v. City of Bottineau, 58 N. D. 740, 227 N. W. 363, 365, the court considered a statute which required that property offered for sale for a delinquent special assessment should be purchased in the name of the city, in the absence of other bidders, and it was said:

"It will be noted that section 3735, supra, requires that when a lot is sold for a delinquent special assessment, and there are no bidders, it shall be struck off to the city. Independent of such a statute, a municipality is not in duty bound to bid in the property sold for nonpayment of special assessment taxes. City of New Albany v. Sweeney, 13 Ind. 245; Creighton v. City of Toledo, 18 Ohio St. 447; Richardson v. City of Brooklyn, 34 Barb. (N. Y.) 569."

In the case of Hauge v. City of Des Moines (Iowa) 216 N. W. 689, an action to recover from the city of Des Moines because of alleged negligence of the city in failing to provide for proper assessments and for their collection to pay municipal bonds which had been issued, the court held that the city had the right to bid at the tax sale, but this opinion was later withdrawn and another opinion substituted, Hauge v. City of Des Moines, 207 Iowa, 1209, 224 N. W. 520, 523, in which it was said that the county treasurer in collecting such taxes acted as an agent of the city, but stated: "We do not hold that it

was the duty of the city to buy in this delinquent property at tax sale."

It seems clear that there was no duty imposed upon the appellant or upon the county treasurer to purchase, in the name of the appellant, or for its benefit, any of the lands offered for sale for taxes, and that there was no duty imposed upon the city to require the county treasurer to advertise and offer this property for sale each year, and that the judgment of the court is not supported by the findings of fact.

The judgment will therefore be reversed.