BANKERS LIFE COMPANY, Appellee, v. EMMETSBURG, Appellant.
No. 44005.

1288 

■ 

■ 

■ 

■ 

MARCH 15, 1938.

REHEARING DENIED JUNE 24, 1938.

Carr, Cox, Evans & Riley and W. L. Hassett, for appellee.

Stipp, Perry, Bannister & Starzinger, G. L. Carmichael, Dwight G. McCarty, and E. F. Nefstead, for appellant.

RICHARDS, J.—During the years 1915 to 1920 defendant city issued $378,752.61 of street improvement bonds, and $62,-552.16 of sewer bonds. Of all these issues there remained outstanding on October 10, 1925, bonds in the principal sum of $115,500. During February and March of 1925, House File 73, being chapter 115 of the Acts of the 41st General Assembly, prescribing a method for the refunding of bonds of the character of those above mentioned, was enacted and published. The provisions of this act as now found in chapter 311 of the Code of 1935, are sections 6126-a1 to 6126-a6, inclusive.

In the summer of 1925, one W. H. Bailey, an attorney residing in Iowa City, journeyed to Emmetsburg to interview the mayor and city council of defendant city. In the interview he informed these officials of the enactment of House File 73, and suggested that the $115,500 of outstanding bonds be refunded. He made proposals that he, Bailey, be employed to furnish the legal services and to serve as the city's legal adviser, and to do certain other things in connection with such refunding, for a compensation to be paid Bailey in an amount equal to 1½ per cent of the refunding bonds that might be issued. A written contract with the city embodying these proposals was procured by Bailey. It is also in the record that before he appeared in Emmetsburg there had been negotiations between Bailey and a bonding house, known as Becktel & Co., with reference to the possible issuance of refunding bonds by defendant to pay off and take up the outstanding bonds. All that we find in the record respecting these negotiations is Bailey's testimony that Becktel & Co. undertook to have these outstanding bonds on hand for surrender upon issuance of the refunding bonds. Pursuant to the contract between the city and Bailey the latter gathered data and prepared forms of resolutions and of the refunding bonds to be issued. Following these preparations, and on October 10, 1925, there were issued by the city $90,000 of refunding bonds to pay off and take up bonds issued in payment for street improvements, and $10,000 of refunding bonds to pay off and take up bonds issued in payment for sewers. From the

Carleton D. Beh Co. there was received for these refunding bonds the sum of $100,000 and a small amount of accumulated interest. Also, as a part of this refunding operation the city contributed $15,445.98 toward paying off the $115,500 of old bonds. This contributed sum was not derived from any assessments for the costs of the street improvements or sewers but from funds that were not available for payment of the original or the refunding bonds excepting as the city voluntarily made them so. There was also in the hands of the county treasurer at the time of the refunding the sum of $6,247.57 which had been collected upon special assessments supporting the original bond issue, and this money came into the fund for liquidating old bonds at about the time of the refunding. An auditing of the books of the county treasurer resulted in an additional sum of $6,527.93 being paid into the fund in 1927. From these various sources the outstanding bonds of $115,500 were fully paid. With respect to the original bonds there was no shortage in the refunding operation.

Plaintiff being owner of $64,000 of the $90,000 of street improvement refunding bonds and of the $2,500 of the $10,000 of sewer refunding bonds, brought this suit in equity, alleging that its bonds were due and unpaid, and that defendant city by issuance of the refunding bonds became a trustee charged with certain duties for the benefit of the bondholders. The petition sets out various alleged derelictions of such alleged duties, and prays that defendant be required to account as trustee for its acts and doings in the assessment and collection of the special taxes levied for the purpose of paying the costs of construction of the respective improvements in the street improvement and sewer districts, and for all its acts and doings in the preserving of the liens of the respective assessments, and for all its acts with regard to the collection, distribution, and disposition of all assessment funds, and that upon such accounting plaintiff have judgment against defendant city for full amount of plaintiff's bonds, with interest, and such further relief as may be just and equitable. Defendant filed answer, denying that the city had failed in performing any duty in respect to the bonds. The answer also contained a detailed accounting of the collection and disbursement of the special assessment, that supported the refunding bonds. The case was tried on its merits. The district court found that defendant either made an excessive assess-

ment or was grossly negligent in permitting the assessed property to be sold at a very small percentage of the assessments levied against various lots, and entered judgment against the city for $74,993.75 being the entire amount due at the time of the judgment upon plaintiff's bonds. Therefrom defendant city has appealed.

**▐▌▌** The refunding bonds were not general obligations of defendant city. On the contrary the statutes at all times provided that these bonds were payable out of the funds derived from the special taxes and interest thereon collected upon the special assessments pledged to their payment, section 6121, Code 1924. Section 6126-a5, Code 1935. Such bonds did not make the city liable in any way, except for the proper application of said special taxes. Section 6123, Code 1924, section 6126-a6, Code 1935. Nor does plaintiff claim that it was within the powers of defendant city to issue these refunding bonds as its general obligations. What plaintiff does point out is that section 6126-a2, Code 1935, provides that refunding bonds shall substantially conform to the provisions of chapter 311 of the Code, and that section 6114 found in that chapter provides that "said bonds * * * shall be substantially in the following form, but subject to changes that will conform them to the resolution of the council, * * *." The "following form" referred to in foregoing quotation is set out in section 6114. Plaintiff further points out that in this form the legislature has included a paragraph, which, when appearing in a bond, amounts to a certificate and recital by the city issuing the bond with respect to certain matters. In each bond held by plaintiff is found what appears to be a substantial compliance with the certificate and recital contemplated in section 6114, the following being the language used:

"And it is Hereby Certified: That all the acts, conditions and things required to be done precedent to and in the issuing of this series of bonds, have been done, happened and been performed in regular and due form as required by law and resolution; and for the assessment, collection and payment hereon of said special tax, the full faith and diligence of the City of Emmetsburg, Iowa, are hereby irrevocably pledged."

It is because matters stated in such certificates in plaintiff's bonds were allegedly not true and correct in fact, and because

the city allegedly failed to exercise the full faith and diligence that was pledged in such certificates, that the plaintiff now makes claim that it is entitled to a judgment against the city for the full amount of its bonds. The defendant's alleged delinquencies with respect to the contents of the certificates we proceed to consider.

■ The certificates in the bonds state in substance that all the acts and things required to be done precedent to and in the issuing of the bonds had been done in regular and due form as required by law and resolution. Section 6126-a2, Code 1935, provides that the face amount of the refunding bonds shall be limited to the amount of the unpaid special assessments with the interest thereof of the particular issue of bonds sought to be refunded. At the time of issuance of plaintiff's bonds the unpaid special assessments with the interest thereon of the issues of bonds that were being refunded amounted to $104,131.72. Thus the record apparently shows that the amount of the refunding bonds was within the limit fixed by section 6126-a2. But plaintiff says the amount of the bonds did in fact exceed the limitation because, approximately $28,000 of the unpaid assessments having become delinquent, the county treasurer had failed to enter the *amounts* of such delinquent special assessments upon the tax lists coming into his hands in the succeeding year or years, as required by section 7193, Code 1924. Plaintiff says that such failure on part of the county treasurer resulted in the lien of these delinquent assessments being lost at the time of the issuance of the refunding bonds, and that consequently the approximate $28,000 of delinquent assessments were not unpaid special assessments within the meaning of section 6126-a2, and that consequently the amount of refunding bonds was in excess of the limitation.

Plaintiff rests its foregoing proposition on the naked fact that the county treasurer failed to bring forward on the tax lists the *amounts* of the delinquent assessments. And it might be said if there was a failure on the part of the county treasurer to obey the statute, and if the city must respond in damages for such failure, and if such failure had operated as a complete payment or discharge of the tax, then there might be reason for plaintiff's relying on the failure of the treasurer, *without more,* to sustain his proposition that there was a shortage of unpaid special assessments. But the failure on part of the treasurer, if

there was such failure, did not discharge or pay or render void the delinquent assessments. The omission was a mere irregularity. In Griffin v. Bruce, 73 Iowa 126, 128, 34 N. W. 773, 774, we said:

"The fact that the tax was not carried forward upon the subsequent tax books did not operate as a discharge or payment of the tax. (Barke v. Early, 72 Iowa 273, 33 N. W. 677.) The omission to perform this duty by the treasurer was a mere irregularity in the exercise of the duties of his office, which, it is true, rendered the sale invalid, but advantage should have been taken of it before the expiration of the limitation fixed by law. See Guthrie v. Harker [C. C.], 27 Fed. Rep. 586."

The limitation of time referred to in the foregoing quotation is that now found in section 7295, Code 1935, being the period of five years from the execution and recording of the treasurer's deed.

In view of the foregoing it is necessary to say that the allegation and proof of a failure by the county treasurer in respect to section 7193 would not, without more, establish that the bonds were not limited to the amount of unpaid assessments. This is true because there had been no payment and no discharge of the delinquent assessments, although the treasurer's omission affected them with a degree of illegality, rendering them not void, but only voidable, and that only at the pleasure of the owners of the respective tracts. The assessments were still collectible by sales of the properties. Such a sale could be impeached only by proper proceedings brought by the property owner within five years from the execution and recording of a treasurer's deed conveying the property. The allegation by plaintiff of the treasurer's failure thus being in effect no more than an allegation that a portion of the unpaid special assessments became voidable at the instance of property owners, it follows that plaintiff's complaint must be more than that the treasurer failed in his duty, and must include a showing that by reason of these delinquent unpaid assessments becoming voidable they lost their efficacy as unpaid special assessments supporting the bond issue, and that some injury resulted therefrom to plaintiff for which it should be compensated in damages by defendant city.

That the voidableness of the delinquent assessments neither

affected them as efficient unpaid assessments supporting the bonds, nor resulted in loss, injury, or damage to plaintiff is the only conclusion from the record before us. No owner of any of the assessed properties questioned the validity of any assessment. None of the assessments have been adjudicated to be invalid nor is there any claim that any persons interested in the properties made any such contention. We find nothing in the record indicating that the assessments have not been treated and accepted as valid by all persons interested, and it further affirmatively appears that all of the $104,131.72 of unpaid assessments, including the delinquent assessments under discussion, were either paid or their collection enforced by the statutory method of sale of the properties by the county treasurer, commencing in 1928, excepting that approximately $2,400 of special assessments remained outstanding at the date of the trial. The result is that as a bondholder plaintiff received the benefits of the delinquent assessments in the same manner as if the county treasurer had unquestionably complied with section 7193. We are forced to conclude that upon the record now before us it cannot be said that plaintiff has made out a cause of action on account of injuries or damages that have been suffered by plaintiff through any omission on the part of the county treasurer. The foregoing disposes of the additional contention that the county treasurer in like manner omitted to carry forward delinquent assessments after the issuing of the plaintiff's bonds. And what we have said pertains to the showing in the record, of the situation that existed, down to the time of the trial.

■■■ In order that one question be considered at a time, the foregoing discussion has proceeded as if we agreed with plaintiff that the alleged failure on part of the county treasurer in some way constituted a delinquency of duty on part of the city. But we do not so agree. The claim that the city was answerable for the treasurer's omission is based on an assumption by plaintiff that the county treasurer was, in view of the statutes, the agent of the city, and that such agent's failure was the failure of the principal, the city. In support plaintiff cites Hauge v. Des Moines, 207 Iowa 1209, 224 N. W. 520, 522. In that case plaintiff sued in one count on a $100 street improvement bond, the last one of a series of 43. It was claimed that the special assessments with interest had not produced sufficient special taxes to

fully pay this last due bond. The city pled in defense that the county treasurer collected interest on the assessments in the month of March and could not pay such collection to the city until about May 15 following, because an earlier payment was physically impracticable, and that by reason of the delay there resulted a deficiency of funds to meet the accruing interest on the bonds. The opinion holds the answer did not state a defense, one reason being that the city should have protected the bondholders, as at all times it knew of the condition that existed. The manner in which the protection should have been afforded the opinion does not point out. It is obvious, however, that the city, knowing that the money was in the hands of the county treasurer, at least could have attempted to protect the bondholders by demanding its payment to the city, and the failure to do so, and the unexplained awaiting upon the pleasure or convenience of the county treasurer did not exemplify the diligence that was pledged in the bond.

The opinion in the Hauge case also states that, on the face of the statutes, the county treasurer must be looked upon as an agent of the city for the *specific purpose* of receiving and collecting special taxes, and that the city, therefore, cannot be heard to say that, because of the neglect or failure of one of its agencies in getting this money to the city by the time the bonds and interest are due, it, the city, has fully complied with the recitals of the bond. It is to be noted that in the Hauge case no suggestion of agency is found that extends beyond the *specific purpose* mentioned. It is this pronouncement in the Hauge case on which plaintiff in the case at bar relies to sustain its contention that, under the statutes, the county treasurer in obeying or failing to obey section 7193 was acting in the capacity of agent of defendant city, and that consequently any failure was that of the defendant city, for which it must answer in damages. It will be noted that this pronouncement in the Hauge case is that the city may not be heard to say *the city* has fully complied with the *recitals in the bonds,* under the fact situation the court pointed out, that is, in a situation where the agency provided by statute for collecting the tax had the money on hand and had neglected and failed to get the money into the hands of the city. The recital in the bond to which the opinion makes reference is necessarily the pledge of due diligence. So understood, the pronouncement amounts to saying that it was

not due diligence *on the part of the city itself* to fail to procure and apply the money that was available and that the neglect of the agency provided for collecting the tax was not a defensive matter excusing the city's own want of diligence. We think such was the thought of the court, rather than that there was an agency in such sense that the city's liability arose mediately therefrom. Such interpretation of the opinion seems most natural because the thing the court was discussing was whether an answer setting up the failure of the county treasurer was a defense to the tardy application of the funds on the bonds. And we think such interpretation is wholly consistent with and finds support in the statement found in the same paragraph of the opinion, that the city "should have protected the bondholders against the same" *as it knew the conditions that existed.* In this statement is an inference that the obligation of the city inhered in its own duties, and was independent of any relationship of principal and agent. But if there were given to the pronouncement in the Hauge case all that it is claimed for it by plaintiff, yet in our opinion there would not be sustained the proposition that in section 7193 or in other statutes is found any legislative intent that the county treasurer, in performing his official duties under section 7193, was functioning as the agent of defendant city. In the Hauge case the opinion points out that it is under the statutes that the duty is conferred on the county treasurer for the *specific purpose* of collecting and receiving the special taxes, to be turned over to the city. By reason of this necessary accounting by the treasurer to the city the statutes contemplate continuing relationship between the treasurer and the city necessitating contacts and transactions between them with respect to special taxes. To the extent that due diligence pledged by the city may require, the city acquires information of the collections made by the treasurer. The statutes contemplate a degree of duty on the part of the city, consistent with due diligence, to be observant of the transactions of the county treasurer in the collection of special taxes, and a dependence upon the county treasurer for their collection and payment to the city. These things are referred to in the Hauge case as indicating that under the statutes the treasurer must be looked upon as an agent of the city for the specific purpose of receiving and collection of special taxes. But none of these features of contact, observation, information, and dependence, re-

lied on in the Hauge case, are to be found in connection with section 7193. The duties imposed by this statute do not accomplish any *specific purpose relating to special taxes* as the court said was indicated by the statutes depended upon in the Hauge case. The distinction is that nothing in section 7193 demands attention thereto by the city. On the contrary, the scope of the statute is general. It applies to taxes. Special taxes are not in terms mentioned. This court has held, however, that special taxes were within the statute's general intendment.

The question whether the county treasurer was the agent of the city in the performance of certain statutory duties was an issue in Grand Lodge v. City of Winner, 63 S. D. 390, 259 N. W. 278, 279. Plaintiff in that case, as owner of a paving assessment bond, brought action against defendant city for damages alleged to have been caused by the neglect of the county treasurer to perform statutory duties connected with the collection of special assessments as they became due. It was claimed that the city was liable because the negligent county officials were agents of the city. We quote from the opinion:

"The appellant's cause of action narrows down to the theory that the county officers neglected to perform certain statutory duties, and that they were the agents of the respondent city and as such the city is liable for damages to the bondholders because the county officials neglected to perform their statutory duties. * * *

"The failure and breach of duty cannot be charged in this instance against the city or its officials, and from the stipulation it is quite apparent that it is not the appellant's intention to charge the city with the breach, but rather that the city is responsible for the breach of duty of the county treasurer, and that the city is responsible for the county treasurer's negligence."

Following a review of certain statutes the opinion continues:

"Hence it is quite apparent that the Legislature imposed a duty upon each, that is, the city and its officials, to perform certain duties, and thereafter the county officials, or more particularly the county treasurer, to perform his duty. The Legislature seems to have provided the manner in which the assess-

ments and collection thereof should be made, and there is nothing to indicate that there was an intention to impose a liability upon the city and its officials for any neglect of duty on the part of the county officials.

"The question might be asked, and with propriety, What further duties could possibly be imposed upon the city than those set forth in the statute? What authority would the city have to collect such a special assessment other than through the channels provided by the statute in which the county treasurer alone could possibly make the collection after the certificates had been properly certified to the county treasurer? Under what possible power or provision could the city proceed further? The city authorities as officers had, in our opinion, taken all the steps authorized and permitted by the statutes to collect the special assessment and could not do anything more. * * *

"It seems clear to us that no agency existed between the city and the county, and that there was no duty imposed upon the city to do anything further than it did do, and that there was no duty requiring that the city direct and command the treasurer to advertise and offer the property for sale each year, and to direct that the property be purchased at the different sales."

We are unable to discover any legislative intent in any of our statutes, or any principle of law, that warrants holding that the county treasurer in performing his official duty under section 7193 was functioning as an agent of defendant city, in any such sense as to render the city answerable for damages that may have resulted from his official neglect. It should be added that defendant's contention that the county treasurer did in fact act in substantial compliance with section 7193 need not be considered.

▮▮▮ In another respect plaintiff seeks to impute liability to defendant because of the certification in the bonds that all things and acts had been done in regular and due form as required by law. Plaintiff's claim is that the certificates amounted to a representation that each of the properties had been assessed in an amount not in excess of 25 per cent of its actual value, and that this was a misrepresentation because some properties were, allegedly, assessed in excess of such proportion of actual values, in violation of section 6021, Code 1924. In evaluating

plaintiff's proposition it is of course essential to inquire what was the thing or fact that was represented to be true. The substance of the certificates being that all acts and things had been done in regular and due form as required by law, the answer as to what was represented, is to be found in the law. The law as contained in our statutes reveals the following relevant matters: The legislature constituted the city council as the tribunal having the duty, according to their own judgment and discretion, to determine and fix the amount of each assessment. No other tribunal is provided by the legislature to make these determinations, except as right of appeal confers jurisdiction on the courts. No other procedure exists by which these things can be done. As such tribunal the city council fixed the amounts of the assessments, and in so doing, conformably with the manner of procedure prescribed by section 6021, Code 1924, they made their finding and determination of facts, including the fact that none of the assessments exceeded 25 per cent of the value of the respective properties. These were the acts that are specified in the statutes as the things that were required to be done, and likewise this was the required manner of doing them. It follows that it is the doing of these things in the manner prescribed, that the legislature had in mind, when it provided that the bonds certify and recite that all acts and things have been done in regular and due form as required by law. In the statutes we discover no legislative intent that the certificates were in the nature of a warranty that the city council possessed and exercised a judgment and discretion of such perfection that fallability could not be shown. Upon so elusive a subject matter as property values, such legislative intent would be at least somewhat unexpectable. In other words, the thing certified in the bonds is that, exercising its own judgment and discretion, the city fixed the amount of the assessments, and observing section 6021 found and determined the fact that the actual values of the properties were such that the assessments were within the statutory limitation. Plaintiff does not claim that the assessments were in excess of 25 per cent of actual values as the city council found them to be when they were exercising their judgment respecting such values. That would involve a different problem. Nor does plaintiff impeach what was done on account of fraud or on any other ground that might vitiate the proceedings. Plaintiff's sole complaint is of the quality of the city's judgment respecting

values. Reduced to its simplest terms the complaint is that the judgment and discretion exercised by the city council as to the values of the properties was inaccurate. The relief plaintiff seeks is that the question of the accuracy or inaccuracy of judgment be reviewed by a court of equity. Our prior holdings are that, in the absence of fraud or other sufficient grounds for attacking the proceedings, courts of equity, excepting in event of appellate jurisdiction, do not assume to determine a second time matters already adjudicated by the tribunal set up by the legislature to make such determination. Stockholders Investment Co. v. Town of Brooklyn, 216 Iowa 693, 246 N. W. 826; Morrison v. Culver's Estate et al., 216 Iowa 676, 248 N. W. 237; Inter-Ocean Reinsurance Co. v. Sioux City, 219 Iowa 998, 258 N. W. 907. Plaintiff points out that in these cited cases the plaintiffs were holders of certificates of assessment whereas in the case at bar plaintiff was a holder of bonds supported by certificates of assessment; also, that when bonds are issued supported by certificates the city retains the certificates and pledges its full faith and diligence for the collection and payment upon the bond of the special tax available through collection or enforcement of the assessments. But in the last-cited cases the plaintiff sought to impute liability to the city upon certifications contained in the certificates of assessments that were essentially of the same force and effect as the certificates in the bonds in the instant case with respect to all things having been done by the city as required by law. The statutory duties in the making of the assessments are identical, whether the certificates are turned over to the contractor or held by the city to support the bond issue. Though bonds have been issued, we are unable to discern any additional burden cast upon the city in making representations as to the making of the assessment. As holding otherwise plaintiff cites Hauge v. Des Moines, 207 Iowa 1209, 224 N. W. 520. In the plaintiff's fourth count in that case it was complained that the city levied a special assessment in excess of the 25 per cent limitation. The lower court had overruled a demurrer to this count, and this court held such ruling was correct; there being a question of fact under this count on which the bondholders were entitled to have an adjudication. But we are unable to determine from the opinion the extent of the matters that may or may not have been contained in the petition in the way of attack upon the assessment, and cannot agree with plaintiff that

the same issues were considered in that case, in holding the demurrer properly overruled, that are now before us in this case.

■■■ Plaintiff also seeks to impress liability on defendant for violation of the due diligence pledged in the bonds. The evidence relied on in that respect is the testimony of the mayor of defendant city, who held that official position from 1923 until in 1926, to the effect that while he was mayor the city was doing nothing in the way of collecting assessments. Plaintiff's testimony goes no further. But the record discloses that thereafter, beginning as early as in 1928, the city acquired from the holders certificates of purchase at tax sale, made-redemption from scavenger sales, acquired title to property under tax sale, acquired title by deed from at least one property owner, expending the city's general fund for these purposes. Upon the trial the city tendered to the bondholders all these acquisitions, and as we understand the record it is a continuing offer; the city disclaiming any reimbursement of expenditure of general funds, or any profit growing out of acquiring the properties. As already stated, properties assessed have been sold by the county treasurer until the assessments outstanding have been reduced to approximately $2,400. Lack of diligence in collection of the assessments is not the fair conclusion from such a record.

Upon plaintiff's contention that it was damaged in that interest losses were suffered, we find no supporting evidence. The complaint is that interest was lost because the original bonds were not immediately paid. The evidence is rather nebulous whether it so happened, but if it did any interest accruing after the refunding was paid from the funds provided by the city in which plaintiff had no interest. No loss is shown to have resulted to plaintiff because it is the record that all moneys derived as special taxes upon the assessments that supported the refunding bonds were properly and fully applied on such bonds with an additional sum of $2380.68.

■■■ Finally, it is argued by plaintiff that evidence of the fact that the amount realized from the special taxes does not reach far enough to pay all the bonds is sufficient proof to establish liability on the part of the city. In order to be sound, support of this proposition must be found in the statutes, for there alone, if anywhere, is such liability created. Looking at these statutes, the city is limited in the amount of the special assessments it may levy. That is, after the cost of the improve-

ment is ascertained, this amount and no more may be assessed to the various properties benefited. Section 6018, Code 1924. Plainly, defendant city had no authority which would permit of a levy in such amount, above the cost of the improvement, as would provide a margin of safety to take care of shortages in the special taxes that might result from contingencies arising, without fault of the city, after the assessment, such as unexpected depreciations of values of the assessed properties. Except to the extent that the city may see fit to pay a part of the cost of the improvement from general funds, the statutes contemplate that the assessments will be equal in amount with the cost of the improvement and no more. The result and logical conclusion from such statutory provisions are so clearly expressed in Richardson v. City of Casper, 48 Wyo. 219, 45 P. 2d 1, 3, that we quote therefrom:

"Theoretically, if the money had been applied on the bonds as soon as paid in on the assessments, the fund, if sufficient in the first instance, should have been sufficient throughout. But the attainment of such ideal balance has neither been provided for by law, nor, in practice, would be easily reached under the most favorable circumstances. Assessments apparently are limited to the cost and expenses of the improvement (section 22-1521), and bonds are apparently authorized to be issued in the same amount, though not greater. Section 22-1604. But a deficiency will probably be ultimately found in every case, unless the total bonds issued are less in amount than the assessments levied, or unless other effective means of equalization are provided for by law. In the case at bar, the sum total of the bonds apparently was equal to the sum total of the assessments. The deficiency might be partially due to the fact that some assessments would be paid up in full, but not in an amount sufficient to call and retire a bond in the sum of $500. We have here an inherent defect in the scheme of the law, which on the one hand leaves a way open for a taxpayer to pay his assessment in full at any time (section 22-1547), stopping interest on that amount, without making adequate provision for stopping interest at the same time on the proportionate amount of bonds. South Dakota, as disclosed in City of Winner v. Kelley, supra, [8 Cir., 65 F. 2d 955], attempted to meet such situation at least partially by providing that the city should put the accumulation in the improve-

ment fund out at interest. We have found no such provision in our law. Nor can we hold the city defendant here guilty of tort for a defect inherent in the law.''

■■■ In the case at bar the only conclusion to be drawn from the record is that a deficiency in the special taxes resulted from the nation-wide business reversal, depression, and shrinkage of values during the years following the issuance of these bonds, creating in Iowa an emergency on account of shrinkage of real estate market values which several legislatures have declared existed, and of which we take judicial notice.

■■■ Loss by those holding securities dependent on realty values has been a common experience. Defendant city was without authority to provide through assessments funds to cushion the possible loss plaintiff may have sustained. As held in the last-cited case, it is likewise our opinion that defendant cannot be held guilty of a tort because there was a defect inherent in the law. Whatever may be said in the Hauge case, supra, and in First National Bank of Elliott v. Town of Elliott, 211 Iowa 341, 233 N. W. 712, cannot be looked upon as fixing any liability that is not created by the statutes themselves.

It is our conclusion that plaintiff did not establish that any liability on part of defendant city had arisen at the time of the trial. The judgment and decree rendered against defendant was erroneous. Defendant was entitled to a judgment against plaintiff. The case is reversed, with instruction that there be proceedings in the district court in accordance with this opinion.—Reversed, with instruction.

HAMILTON, DONEGAN, ANDERSON, KINTZINGER, and MILLER, JJ., concur.

MITCHELL, J., STIGER, C. J., and SAGER, J., dissent.

MITCHELL, J. (dissenting)—This case is controlled by the same rule of law as the case of Bankers Life Co. v. Spirit Lake, 224 Iowa 1304, 278 N. W. 320, and the dissent in that case controls in this case.

I am authorized to state that Chief Justice Stiger and Justice Sager join in the dissent.