BANKERS LIFE COMPANY, Plaintiff, Appellee, v. SPIRIT LAKE, Defendant, Appellant; GREAT WESTERN INSURANCE COMPANY et al., Intervenors, Appellees.

No. 43944.

MARCH 15, 1938.

REHEARING DENIED JUNE 24, 1938.

Wm. L. Hassett and Carr, Cox, Evans & Riley, for appellees.

H. E. Narey, for appellant.

RICHARDS, J.—On August 10, 1925, the town of Spirit Lake,

proceeding under chapter 115 of the Acts of 41st General Assembly, now appearing as sections 6126-a1 to 6126-a6, inclusive, Code 1935, issued five separate and distinct series of refunding bonds. One series was to pay off and take up those that were outstanding of an issue of storm sewer bonds originating in 1920. Each of the four other series was issued to take up and pay off the outstanding bonds of a particular one of four previous original issues of street improvement bonds. The questions involved in this appeal pertain to these five different and distinct series of refunding bonds, each supported by its own separate special assessments of property benefited.

In this action in equity, plaintiff, owner of a number of the outstanding bonds of each of the five refunding issues, admitting the bonds were not general obligations, seeks to recover on account of alleged breach by appellant of obligations alleged to have been assumed by it in the issuance of the bonds. In its petition plaintiff sets out, and predicates liability for the alleged breach upon, the following recital and certificate contained in each of the bonds:

"And it is hereby Certified: That all the acts, conditions and things required to be done precedent to and in the issuing of this series of bonds, have been done, happened and been performed in regular and due form as required by law and resolution; and for the assessment, collection and payment hereon of said special tax, the full faith and diligence of the Town of Spirit Lake, Iowa, are hereby irrevocably pledged."

One of the statutory provisions in connection with the issuing of refunding bonds, found in 6126-a2, Code 1935, is that "the face amount thereof shall be limited to the amount of the unpaid special assessments with the interest thereof of the particular issue of bonds sought to be refunded." In the issuing of each of the five series of bonds the city failed to comply with this requirement. The record shows that the amounts of the respective deficiencies of unpaid special assessments in the five series of refunding bonds were as follows:

| | |
|---|---|
| In Paving District No. 1, | $3071.21 |
| In Paving District No. 1A, | 1731.50 |
| In Paving District No. 2, | 9255.76 |
| In Paving District No. 2A, | 679.47 |
| In Storm Sewer District No. 1, | 1285.86 |

**■■■** Except as it relies on certain contractual relations with one Bailey, wherein we find nothing constituting a defense, defendant in argument raises no question as to its liability for damages resulting to the bondholders from these deficiencies of special assessments, and in effect concedes that such liability exists, if the finding be that there were deficiencies. First discussing the liability of defendant in connection with Paving District No. 1, the deficiency as above shown was $3071.21. The special assessments drew 6 per cent, the refunding bonds 5 per cent, per annum interest. It would appear that the loss sustained by the holders of the Paving District No. 1 refunding bonds, by reason of the deficiency, would be the measure of their damages. Though plaintiff in argument has not touched upon the question, it is apparent that primarily the bondholders' loss was the $3071.21 with 6 per cent per annum interest thereon from August 10, 1925. But we are of the opinion that in computing the loss there should also be included an item made up of interest at 5 per cent per annum upon each annual installment of interest upon the $3071.21 of shortage of special assessments, from the due date of said respective interest installments, in order that the bondholders be compensated as nearly as can be approximated, for the delay that there has been in the application of these interest installments, which, at least theoretically, would have been paid in and applied annually. What has been said is with the limitation that the holders of outstanding bonds of Paving District No. 1 would be entitled to recover on account of the deficiency in that one district, and in an amount not greater than required for retirement of all outstanding bonds of the series issued in that district. In like manner would be ascertained the damages sustained by the bondholders of each of the four other special assessment districts, respectively, in which the deficiencies are above set out.

**■■■** Besides the deficiency that has been discussed, plaintiff urges that in each of the five assessment districts there was an additional deficiency of unpaid special assessments supporting the refunding bonds of that district. When the refunding bonds were issued a portion of the assessments in each district were delinquent. It is claimed by plaintiff that the county treasurer had failed to enter the amounts of these delinquent special assessments upon the tax lists coming into his hands in the succeeding year or years, as then required by section 7193, Code

1924. Plaintiff claims further that such failure on part of county treasurer resulted in the lien of these delinquent assessments having been lost at the time of the issuance of the refunding bonds, and that by reason thereof such delinquent assessments were not unpaid special assessments within the meaning of the provision contained in section 6126-a2 above noted. Plaintiff's conclusion is that the face amount of the refunding bonds in each district was in excess of the statutory limitation, to the extent of the amount of the delinquent assessments.

It would serve no useful end to discuss whether, as defendant claims, there was a substantial compliance with section 7193 by the county treasurer, nor to discuss the various points on which plaintiff relies to sustain the proposition that the alleged failure of the county treasurer resulted in liability on part of defendant city, the principal contention in that respect, that the county treasurer was the agent of the city in the performance of the duties prescribed by section 7193, having been discussed and determined by this court adversely to plaintiff herein, in the recent case of Bankers Life Co. v. Emmetsburg, 224 Iowa 1287, 278 N. W. 311. Such discussion we omit because in the instant case, as in the cited Emmetsburg case, the only conclusion from the record is that at the time of the trial no loss, damage, or injury to the bondholders of any of the improvement districts had resulted from the alleged loss of lien of the delinquent assessments. On the contrary, excepting comparatively small amounts of outstanding assessments the collectibility of which is not questioned in the record, it affirmatively appears that all the assessments including those that were delinquent, have been collected or sales of the property have been had in same manner as if there had been no question regarding loss of liens. So far as we can find in the record the claim that the liens were lost has first been raised by plaintiff as a ground of recovery in this case. For the reasons set forth in the cited Emmetsburg case plaintiff has not shown itself entitled to recover damages upon the isolated fact, if it be a fact, that the treasurer failed to comply with section 7193.

There has been difficulty encountered in reviewing this case de novo. It may be this results from the manner in which plaintiff presented the issues in the district court. It was there plaintiff's contention, as it is here, that it should recover the full

amount of the bonds, rather than that amount to which it may be entitled upon an accounting of the proceeds of the special assessments together with such further funds as should be accounted for as damages on account of any statutory dereliction of duty on the part of the city. The result is that the record is so nebulous that we are unable to determine to what extent, if any, the plaintiff or either of the intervenors may be entitled to judgment in each of the five districts, upon such bonds as they hold, on account of the deficiencies in the special assessments. To add to the difficulty it appears on the record that the city purchased at tax sale many of the properties against which there were special assessments, has acquired treasurer's deeds, has sold a number of the properties, has accumulated rentals, and in these acquisitions by the city is a considerable amount of value that might be termed profits realized from the city stepping in and buying at treasurer's tax sales, collecting rentals, and selling the properties at an advance. In the trial below the city tendered these acquisitions into court for the benefit of the bondholders, consenting they be considered as a part of the accounting and that the bondholders have the benefits thereof, subject only to the city being credited with such expenditures in connection therewith as may be legitimate deductions. No reference to this tender is found in the decree. The district court adopted plaintiff's theory and entered judgment for the full amount of the outstanding bonds held by plaintiff and intervenors. Plaintiff and intervenors had not shown that their right of recovery was in such amount, and the judgment and decree must be reversed because erroneous. But inasmuch as plaintiff and intervenors hold bonds in the various special assessment districts in which there is a liability on the part of the city as hereinbefore pointed out, as a part of the reversal this case will be remanded to the district court for entry of judgments for such amounts, if any, as it may be ascertained plaintiff and intervenors are entitled to recover, with respect to each of the special improvement districts, and taking into consideration the respective rights of all holders of outstanding bonds in each district, said district court also to accord to plaintiff the right to claim any additional benefits as holder of a portion of the outstanding bonds arising by reason of the tender into court of the acquisitions we have mentioned but subject to defendant being reimbursed therefrom for such necessary outlay and expenses in

connection with such acquisitions as defendant reserved in making said tender. It should further be stated that the two intervenors appeared and adopted the plaintiff's pleading and record. The district court accepted this tender of issues by intervenors, entering judgment for them against defendant as well as for plaintiff. We have adopted the procedure, and all that is said above with reference to plaintiff's case applies to the intervenors, and the judgment for each intervenor is likewise reversed and remanded in the same manner and with the same force and effect as the judgment rendered for plaintiff.—Reversed and remanded.

HAMILTON, KINTZINGER, DONEGAN, ANDERSON, and MILLER, JJ., concur.

MITCHELL, J., STIGER, C. J., and SAGER, J., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and therefore respectfully dissent.

The question upon which we differ is the construction of section 6126-a2 of the 1935 Code, which is as follows:

"6126-a2. Form and amount. Bonds thus issued shall substantially conform to the provisions of this chapter, and the face amount thereof shall be limited to the amount of the unpaid special assessments with the interest thereof of the particular issue of bonds sought to be refunded."

It is the contention of the majority that the town of Spirit Lake had a right to issue and sell bonds for the full amount of the unpaid special assessments, whether these special assessments were liens against real estate or not, whereas it is my contention that the Legislature of Iowa gave to the town the right to sell bonds only for the amount of unpaid assessments which were liens against the real estate.

The town of Spirit Lake sold bonds in the amount of $175,870.37, and on the date these bonds were sold, to wit, August 10, 1925, the aggregate assessments in the several districts amounted to but $159,846.57. Thus it appears that at the time the refunding bonds were issued the outstanding assessments were $16,023.80 less than the amount of the bonds. Even the majority hold that the town of Spirit Lake is liable for that amount plus interest. With that of course I agree. At the time

the bonds were issued there were unpaid assessments of $39,-399.32 which were not liens against said real estate, the lien having expired.

In order to arrive at the conclusion reached the majority argue that the special assessments upon which the liens had expired were voidable and not void. It is a nice argument but one that I cannot follow because I cannot conceive that the Legislature of Iowa would authorize towns to issue and sell bonds when the only chance of those bonds being paid would be that the property owners would voluntarily pay assessments that were not liens against their real estate. I say "voluntary", for there is no legal way that payment could be enforced.

The majority in their analysis of the Hauge v. City of Des Moines case, 207 Iowa 1209, 224 N. W. 520, come to the conclusion that it does not bind the town to meet these obligations. I cannot agree with this interpretation. In the case at bar it is not a question of the failure of the town to collect the money after the bonds were issued, but rather the fact that at the very moment the bonds were issued the liens for a large percentage of these unpaid assessments had expired and there was no hope of them being paid except by voluntary payments. Can a town certify (as did Spirit Lake) that everything has been done, and then come into court when there is not sufficient money to pay the bonds, and say, "Well, at the time we issued these bonds there were unpaid assessments on which the liens had expired, and we are not liable for that amount of money"? The liability in this case is based upon the bonds. It is interesting to read the certificate which each bond contained. I quote from the bond:

"And it is hereby certified and recited: that all the acts, conditions and things required to be done precedent to and in the issuing of this series of bonds, have been done, happened and been performed in regular and due form as required by law and resolution; and for the assessment, collection and payment hereon of said special tax, the full faith and diligence of said Town of Spirit Lake are hereby irrevocably pledged."

You will notice it refers to the special tax. There wasn't any special tax as far as the property upon which the liens had expired was concerned, and that meant the funds would be paid not by a special tax but by voluntary payments on the part of

the property owners. I can come to no other conclusion than that the Legislature when it gave to the cities the right to issue refunding bonds for unpaid special assessments meant that bonds could only be issued in the amount of the unpaid assessments that were liens against real estate. To me the majority opinion means that the Legislature intended by this enactment that Spirit Lake could sell bonds in excess of an amount the town knew it could pay. And that means that someone would be buying the obligations of the town of Spirit Lake, which obligations the town knew it could not pay, at the time the bonds were issued. That is what happened in the case at bar.

I am authorized to state that Chief Justice Stiger and Justice Sager join in this dissent.