ELIZABETH HARTZ et al., Appellants, v. J. TRUCKENMILLER
et al., Appellees.

No. 45051.

Carl H. Lambach and Cornwall & Cornwall, for appellants.

H. E. Narey, Geo. E. Gill, and E. F. Kennedy, for appellees.

OLIVER, J.—This action was instituted in 1935 by the holders of certain drainage bonds issued by Osceola county, for joint drainage district No. 3, Dickinson and Osceola counties, Iowa. The defendants are the members of the Board of Supervisors, the Auditor and the Treasurer of Osceola county.

The action is in equity, the principal relief demanded being a writ of mandamus to require the Board of Supervisors to make a new apportionment of drainage taxes and issue additional bonds thereon to cover shortages in the bond fund.

Drainage district No. 3 was established in 1916 by the joint boards of Dickinson and Osceola counties. In 1918 the Board of Supervisors of Osceola county levied special assessments on lands of the district in Osceola county aggregating $158,525 for the payment of the proportionate share of the cost of the improvement located in said county. Part of that assessment appears to have been paid in cash. The balance, $130,434 was to be paid in installments. In 1919 the Board of Supervisors of Osceola county issued $130,400 of 5¾-percent bonds, payable out of the proceeds of the $130,434 of special assessments. These bonds matured at the rate of about $13,000 per year from 1924 to 1933, inclusive. At the time of the trial $111,200 of the bonds and interest thereon had been paid

and plaintiffs held the remaining $19,200, which had matured in 1932 and 1933, and on which interest had been paid to 1932 or 1933. Later $6,300 was paid to apply on the principal of $9,000 of these bonds leaving $12,900 principal of the original issue unpaid.

In 1921 there had been an additional 10 percent ($15,852) levy to cover deficit in cost of construction and also repairs and maintenance. Said levy was partly paid in cash, the deferred balance being represented by a second bond issue of $8,400 at 6 percent made in 1922, with maturities from 1927 to 1936, inclusive; $2,500 of this bond issue is unpaid. However, this bond issue is not directly involved in this suit.

All special assessments covering both issues of bonds have been paid in full, except those upon two certain tracts of land of 160 acres each, which, for convenience, will be here designated by the numbers of the respective sections in which the same were located, to wit: 23 and 26. Both of these tracts were bid in by the Board in trust for the district at scavenger tax sale for general taxes and unpaid installments of the drainage assessments and subsequently tax deeds were secured therefor.

Tract 23 was bid in at scavenger tax sale in 1924 and tax deed was secured in 1927. On this tract the original assessment was $16,022.22, the second assessment $1,602.22. Apparently, the landowner paid no taxes or special assessments after 1918 or 1920. Consequently, there was a loss of the entire amount of the special assessments plus interest. The district also paid general taxes aggregating $2,567.67, and still holds this land which the parties have stipulated to be valued at $5,000.

Tract 26 was bid in at scavenger tax sale in 1930, and tax deed secured in April 1933. On this tract the landowner paid the first three installments of the original assessment, which fell due in 1924, 1925, and 1926. This left an unpaid balance of $6,281.80 on the original assessment and, apparently, the entire second assessment of $897.40. The district also paid general taxes of $938.42, and about $300 for expenses incurred in perfecting the title. Tract 26 was subsequently sold and

the district eventually received $6,539.75 in principal and inter-est. The district collected rentals upon tract 23 to the time of trial and upon tract 26 during the period of ownership, aggregating $7,767.67.

After the district bought the two properties at tax sale it apparently paid all the remaining installments of the assessments against said properties for the original bond issue. These payments were made by warrants drawn upon the consolidated fund of the district and since said payments were then credited to the same fund, the debit and credit items were equal and resulted in no actual change in the account. Some installments of assessments for the second issue of bonds were also thus paid but others were later canceled, apparently in reliance upon Fergason v. Aitken, 220 Iowa 1154, 263 N. W. 850.

All the funds of the district were kept in one consolidated account in which was placed all moneys belonging to the district such as receipts from the sale of both issues of bonds and from the portion of the original assessments not included in the bonds, together with funds belonging to the bondholders such as principal and interest upon assessments pledged to said bonds. Payments of expenses of the construction and operation of the district, as well as principal and interest on bonds were made from said fund. This consolidated account was necessarily complicated and plaintiffs secured an audit, which, among other things, purported to segregate the various accounts.

It is agreed that had the original assessment been collected in full it would have been sufficient to care for the bonds. Indeed, if we correctly interpret the audit, there was an excess of $4,763.08 in the interest spread, over the coupons issued. However, the computations of both sides indicate a net loss of considerably more than $20,000, on account of the failure of the owners to pay the assessments on the two tracts. This figure results from adding loss in principal, interest (apparently to 1933), expenses in connection with selling tract 26 and general taxes on both tracts paid to 1938, and subtracting therefrom rents collected to 1938, the sale price received for tract 26 and the $5,000 estimated value of tract 23.

Plaintiffs have appealed from the decree of the trial court which denied the relief demanded and dismissed the petition.

■ I. One question for solution is whether the Board may be required to reassess the other lands in the district, which have paid their assessments in full, to pay the balance owing on the bonds resulting from the failure to collect the assessments levied upon the two tracts. Although there is no charge of fraud in the spreading of the assessments, appellants suggest that the assessments against the two tracts exceeded their actual value. It is sufficient to say it does not appear that at the times the assessments were spread and the bonds issued the values of the properties were not sufficient to support the assessments spread upon them. This court takes judicial notice of the great shrinkage of real estate values which occurred thereafter. Bankers Life Co. v. Emmetsburg, 224 Iowa 1287, 278 N. W. 311.

Nor is it contended that the Board proceeded illegally or improperly in securing the tax titles and handling the land. Its actions in this connection were legal and were indicative of due diligence and good faith. Sections 7589 and 7590, Code of 1939.

These drainage bonds were issued under the provisions of chapter 2-A, sections 1989-a1 to a60, of the 1913 Supplement to the Code of 1897. Section 1989-a27 provides that each bond shall show that it is to be paid only by a tax assessed, levied and collected on the land within the district. Obviously, such bonds are not general obligation bonds. The section also provides:

"In no case shall the amount of bonds exceed the benefits assessed."

As above noted the amount of these bonds did not exceed the assessments.

Said section also provides in part:

"Should the cost of such work exceed the estimates, *or should the proceeds of the tax when collected be insufficient to pay the principal and interest of bonds sold,* a new apportion-

ment of the tax may be made and other bonds issued and sold * * * to meet such excess of cost *or shortage in the proceeds of tax * * *.''* (Italics supplied.)

Apparently the cost of the work did exceed the estimate and the second issue of bonds was made in part to meet such excess of cost. That portion of the quoted provision is not in question in this case.

It is the italicized portion of the statute that here concerns us. More particularly it is the interpretation of the clause *''the proceeds of the tax when collected.''* If possible, this clause should be interpreted to give effect to all of the language used. Presumably, the words ''when collected'' were used advisedly. The word ''when'' has been variously defined. It is frequently used as referring to time and meaning, at which time, or at the time. Williams v. Washington Life Ins. Co., 31 Iowa 541, 544. If this definition be adopted, the clause might be read ''the proceeds of the tax at the time collected.'' However, the words ''at the time collected'' add nothing to the meaning of the clause. ''The proceeds of the tax *at the time collected''* means no more than ''the proceeds of the tax.'' As thus defined the words ''when collected'' would be redundant and useless. That the legislature intended this result will not be presumed.

The word ''when'' is also frequently employed to express conditional limitation with a meaning equivalent to the word ''if.'' State v. Haberle, 72 Iowa 138, 33 N. W. 461. Adoption of this meaning would result in the clause reading ''the proceeds of the tax if collected.'' Thereby effect would be given to all the words in the clause. We think this is a reasonable interpretation of the language used when considered in connection with the context.

However, appellants contend that the securing by the district of the property taxed constituted a collection of the proceeds of the tax. With this contention we do not agree. Instead of the collection of the proceeds of the tax, the action of the district amounted to no more than the taking over of the

taxed property for the benefit of the bondholders. The proceeds of the tax *if* collected would have been sufficient to pay the bonds. In this situation the statute does not permit a reassessment upon lands which have paid the original levy.

Loss by those holding securities dependent on realty values has been a common experience. Bankers Life Co. v. Emmetsburg, 224 Iowa 1287, 1303, 278 N. W. 311. In the absence of statutory requirement, no good reason appears why the property owners who have paid their assessments in full should be required to make good any loss sustained by bondholders resulting from the decrease in market value of other lands in the district.

Appellants point out that the italicized portions of the statute were amendatory to the original act which already contained the provision, "In no case shall the amount of the bonds exceed the benefits assessed." They say that in view of the foregoing provision of the original act, the amendment added nothing to the statute unless it be interpreted as requiring a new levy under the circumstances of this case. But we think the amendment did have purpose and effect other than as argued by appellants in that it provided a procedure which could be followed in case the principal and interest of bonds issued exceeded the original levy made to pay the same. This conclusion finds support in the fact that both of these provisions still appear in the drainage law (Code sections 7505 and 7509) although, as hereafter noted, section 7509 provides for additional assessments to pay outstanding bonds, only if the original levy was not sufficient.

Section 1989-a27 [Code Supp., 1913] and other parts of the drainage statutes were superseded by similar provisions in the Code of 1924, with changes in language and arrangement. Section 7509, Code of 1924, and subsequent Codes, supersedes the provision here in controversy and provides in part:

"If any levy of assessments is not sufficient to meet the interest and principal of outstanding bonds * * * additional assessments may be made * * *."

We think this language clearly limits the right of the board to make additional assessments for the benefit of outstanding bonds to cases in which the original levy was insufficient.

In comparing the statutes it must be remembered that the new statutes largely represent rearrangements of the old rather than new enactments. Therefore, variances in language are not necessarily indicative of changes in meaning. We think the change in the language of section 7509 [Code, 1924] as compared to section 1989-a27 [Code Supp., 1913] was by way of clarification only, that it effected no material change in the meaning of the parts here in question and that under neither statute could a relevy be required in the instant situation. Western Boh. Frat. Assn. v. Barrett, 223 Iowa 932, 274 N. W. 55.

In this connection it may be noted that certain subsequently enacted statutes relative to defaulted drainage bonds (chapter 358.2, Code of 1939) do not differentiate between those issued under the former and the present statutes. This chapter appears to recognize the rule that one who has fully paid his share of a levy sufficient to meet a bond issue is not liable for deficiencies resulting from the failure of other lands to pay the tax. Other provisions of the drainage statutes give rise to the same inference. We agree with the trial court that the board could not be compelled to require landowners to pay double assessments to take care of the deficit thus caused.

It may be well to say that the tax deeds extinguished the special assessments on tracts 23 and 26, and, therefore, that said tracts may not be subjected to a deficiency levy for the benefit of said bonds. Fergason v. Aitken, 220 Iowa 1154, 263 N. W. 850.

II. Appellants also complain of the refusal of the trial court to require the board to levy an assessment to replace, in the bond fund, amounts allegedly paid therefrom for repairs and other general expenses of the district. It will be remembered all the district funds were intermingled in a consolidated account. That the district was without sufficient funds to pay outstanding bonds and warrants is conceded. However,

all the bonds maturing prior to 1932 were fully paid, without substantial delay.

Appellees attribute the financial difficulties of the district solely to the substantial shortage in the bond fund resulting from the failure of tracts 23 and 26 to pay their assessments. This shortage in the bond fund started in 1919 or 1921 and continued to increase in amount. By 1931 the actual cash shortage occasioned thereby must have been in the neighborhood of $20,000 or $30,000. During these intervening years the district managed to meet the interest payments upon all the bonds and to retire maturing bonds. Obviously such payments must have been made in part by borrowing from other funds. Whether this caused delay in paying warrants and consequent increase of interest burden to the district, the record does not show.

An accountant, employed by appellants, reported that the adverse financial condition of the district was due entirely to the failure of the owners of tracts 23 and 26 to pay their bond assessments. Appellants say this statement was an inadvertence and not in accordance with the facts shown in the record and audits. Another accountant reported to appellants: ''The adverse condition of the district is due principally to assessments lost and taxes paid upon the two tracts.'' Without attempting to set out computations we will say that said loss appears to exceed the amount of the unpaid bonds and to be the cause of the ·deficit in the bond fund.

· Appellants would figure the matter from another angle. It was stipulated that there had been expended out of the consolidated fund $176,861.21 of warrants for construction, maintenance and repairs to November 14, 1938. These figures exclude taxes paid by the district on account of the original drainage assessment and leave as a matter of computation an excess of $2,484.71 over *the original taxes and the ten percent relevy, which aggregated $174,377.50.*

Assuming the correctness of $176,861.21 as the stipulated expenditure figure, it is necessary to determine what funds were received by the district from which said expenditure could

properly have been made. The stipulation covers only the original taxes and 10 percent relevy aggregating $174,377.50. But this is not the total amount received by the district and properly applicable to general expenses. The audit of appellants' accountant shows the following additional receipts in this account: interest $395, miscellaneous refunds $170.95, transfer of district funds from Dickinson county $5,500. Adding these figures to tax receipts of $174,377.50 results in a total several thousand dollars in excess of said expenditures. No diversion of bond funds was shown. It follows that the trial court correctly refused the order of mandamus predicated upon that theory.

III. The County Treasurer was made a party to the suit upon the charge that he had wrongfully paid $3,355 to cover principal and interest of bonds maturing in 1933 thereby withdrawing this amount from the funds available for the payment of bonds maturing in 1932, and entitled to priority. Appellants prayed an order requiring him to restore the funds of the district or for judgment against him upon his failure so to do. The defendants attacked the petition by motion to dismiss on the ground of misjoinder of parties and causes of action. The motion having been overruled the same objection was raised by the answer of the treasurer. In the finding order and decree the trial court found, among other things, that there was a misjoinder of parties and causes of action, sustained the motion to dismiss and dismissed the cause.

The action was in mandamus. As against the officers of the district, it sought an order requiring them to levy drainage taxes. The Treasurer was not an officer of the district. Western Boh. Frat. Assn. v. Barrett, 223 Iowa 932, 935, 274 N. W. 55. Nor was he a proper party to said cause of action. The suit against the Treasurer was for his alleged wrongful payment of bond funds to third parties. Mandamus to require him to make restoration was not proper and appellants in argument say such relief was not sought. No other defendant was involved in this cause of action or was a proper party to it. The causes of action were separate and distinct and were against different defendants. Therefore, the dismissal of the action

against the Treasurer was proper. McPherson v. Commercial Bldg. & Sec. Co., 206 Iowa 562, 218 N. W. 306.

Other defenses urged by appellees need not be considered. The decree of the trial court is affirmed.—Affirmed.

RICHARDS, C. J., and MITCHELL, SAGER, HAMILTON, STIGER, and BLISS, JJ., concur.